■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BRIAN K. McCOTTERY, Appellant. [935 NYS2d 687]—

McCarthy, J.

State Troopers dispatched to defendant's home were informed by his wife that he was inside with a shotgun. During a standoff, three Troopers, a State Police Sergeant, a State Police Investigator and a Forest Ranger attempted to coax defendant out of a bedroom, from which he periodically emerged with a 12 gauge shotgun in an irate condition. After he discharged the shotgun inside the bedroom, defendant emerged without the shotgun, briefly struggled with police, then was handcuffed and placed under arrest.

Defendant was charged with criminal possession of a weapon in the third degree, five counts of menacing a police officer or peace officer and resisting arrest. One menacing count was dismissed prior to trial. At the end of trial, the jury convicted

defendant of resisting arrest and two menacing counts. County Court imposed concurrent prison terms of three years followed by two years of postrelease supervision for each menacing count, and one year incarceration for resisting arrest. Defendant appeals.

The police were not required to take defendant into custody pursuant to Mental Hygiene Law § 9.41, and their failure to do so does not require dismissal of the indictment. The officers had reasonable cause to believe that defendant had committed a crime, thus permitting them to arrest him (*see* CPL 140.10 [1]; *People v Parker*, 84 AD3d 1508, 1509 [2011]). Although several officers indicated that defendant seemed suicidal or mentally unstable, Mental Hygiene Law § 9.41 provides that police "*may* take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others" (emphasis added). The statute is permissive, not mandatory; there is no requirement that police detain someone for mental health reasons, especially when they are aware that the person has committed a crime. The police here acted within their authority by arresting defendant rather than detaining him for an emergency mental health examination.

The verdict was supported by legally sufficient evidence and was not against the weight of the evidence. Defendant contends that the record lacks evidence that he intended to place the investigator and a particular trooper in reasonable fear of physical injury or death by displaying his shotgun (*see* Penal Law § 120.18), or that he intentionally prevented police officers from effecting a lawful arrest (*see* Penal Law § 205.30). The other elements are not contested. Intent "may be inferred from a defendant's conduct and from the surrounding circumstances" (*People v Bush*, 75 AD3d 917, 918 [2010], *lv denied* 15 NY3d 919 [2010]; *People v Foster*, 52 AD3d 957, 958-959 [2008], *lv denied* 11 NY3d 788 [2008]; *People v Zindle*, 48 AD3d 971, 973 [2008], *lv denied* 10 NY3d 846 [2008]). Here, through the testimony of five police officers, the People established that defendant angrily emerged from the bedroom several times, held a shotgun with one hand on the butt and the other on the barrel, and waved the shotgun around. Although defendant once pointed the gun underneath his chin and made numerous comments indicating that he intended to take his own life, he also stated that the officers should tell the coroner to bring lots of body bags and that defendant would kill himself "and anyone that tried to stop him." These statements evince an intent to harm more than just himself. Defendant also discharged his

weapon while in the bedroom, racked the gun and yelled for the police to get back. The jury found that the investigator and trooper who were closest to the bedroom door and most in harm's way were reasonably placed in fear of injury due to defendant's conduct, and we will not disturb that determination.

The officers also testified that when defendant finally emerged from the bedroom without the shotgun, he did not obey orders to get down on the floor, originally had his hands up but lowered them, pulled away when officers tried to grab his arms, struggled and tucked his arms in when the officers attempted to handcuff him. Defense counsel elicited that defendant may not have had time to obey the officer's orders, pulled his hands in to protect himself when rushed by the officers and struggled because he had trouble breathing after being tackled. Given the differing versions presented by this testimony, we will not disturb the jury's determination that defendant intended to prevent his lawful arrest. Defendant's remaining arguments concerning the weight of the evidence are merely attacks on the police officers' credibility or inconsistencies in their testimony and statements. Giving deference to the jury's findings on those matters, the verdict was not against the weight of the evidence (*see People v Shaver*, 86 AD3d 800, 801 [2011]).

County Court did not err by permitting witnesses to rack the shotgun in the presence of the jury. This evidence was relevant to and probative of whether defendant chambered another round after the weapon had been discharged as opposed to simply ejecting the spent cartridge. Additionally, this sound was relevant to whether the officers were placed in reasonable fear, and whether defendant intended that result, when they heard the sound of the shotgun being racked. Therefore, the court did not abuse its discretion in determining that the probative value of these demonstrations outweighed the prejudice to defendant (*see People v Brower*, 285 AD2d 609, 610 [2001], *lv denied* 96 NY2d 938 [2001]).

County Court did not err in permitting the officers to testify as to statements made by defendant's wife. Those statements were not hearsay because they were not offered for their truth but were admitted to show the effect on the hearers, namely how the police responded to the situation and why they took certain actions (*see People v Abare*, 86 AD3d 803, 805 [2011]; *People v Johnson*, 79 AD3d 1264, 1266-1267 [2010], *lv denied* 16 NY3d 832 [2011]). The court provided appropriate limiting instructions to ensure that the jury used the statements only for that purpose and informed the jury that the statements were not admitted for their truth (*see People v Gregory*, 78 AD3d 1246, 1246 [2010], *lv denied* 16 NY3d 831 [2011]).

County Court did not abuse its discretion in denying defendant's request for missing witness charges. The preconditions to such a charge are that the witness must possess knowledge that is material to some issue in the trial, "the witness must be expected to give noncumulative testimony favorable to the party against whom the charge is sought," and "the witness must be available to that party" (*People v Savinon*, 100 NY2d 192, 197 [2003]; *see People v Onyia*, 70 AD3d 1202, 1204 [2010]). The People concede that the witnesses at issue had material knowledge and were available, leaving only the second precondition in contention. The Forest Ranger was the last law enforcement officer to arrive on the scene and was outside of the house for most of the incident. Although he participated in the arrest and helped remove defendant from the house, his testimony would have been cumulative to that of the other officers. A neighbor who tried to coax defendant from the bedroom was only present for a short time and the officers testified about her participation, rendering her testimony cumulative as well. Defendant's wife also spoke with defendant for a minute during the standoff, but officers relayed the results of that failed effort. Defendant objected to the officers' testimony about his wife's statements concerning the events that led to the standoff, but this background information was not directly related to the charged crimes and, as noted above, was not hearsay. Because all of this information was already elicited through the testimony of numerous witnesses, and the three witnesses would have provided cumulative testimony, the court did not abuse its discretion in denying missing witness charges (*see People v Lemke*, 58 AD3d 1078, 1079 [2009]; *People v Pereau*, 45 AD3d 978, 981 [2007], *lv denied* 9 NY3d 1037 [2008]).

By failing to object before the jury was discharged, defendant failed to preserve his argument that the verdict is repugnant (*see People v Alfaro*, 66 NY2d 985, 987 [1985]; *People v Pearson*, 69 AD3d 1226, 1227 [2010], *lv denied* 15 NY3d 755 [2010]). Defendant's remaining arguments have been reviewed and are without merit.

Peters, J.P., Spain, Garry and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.