## Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  July 10, 2014                    104200
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                    Respondent,

        v                                    MEMORANDUM AND ORDER

RANDY L. ROACH,
                    Appellant.
_____

Calendar Date:  May 29, 2014

Before:  Peters, P.J., Rose, Egan Jr., Lynch and Devine, JJ.

_____

        Richard V. Manning, Parishville, for appellant.

        Alexander Lesyk, Special Prosecutor, Norwood, for
respondent.

_____

Peters, P.J.

        Appeal from a judgment of the County Court of St. Lawrence
County (Rogers, J.), rendered April 14, 2011, upon a verdict
convicting defendant of the crimes of menacing a police officer
(two counts) and resisting arrest.

        Defendant was charged in a five-count indictment arising
out of a confrontation with two state troopers during which he
carried and repeatedly refused to relinquish a shotgun.  After a
jury trial, defendant was convicted of resisting arrest and two
counts of menacing a police officer.  County Court sentenced him
to an aggregate term of three years in prison followed by 1½
years of postrelease supervision, and this appeal ensued.

        Defendant asserts that the verdict is legally insufficient

and against the weight of the evidence, specifically claiming that the evidence failed to establish that he intended to place the two state troopers in fear of physical injury or that the troopers' fear was reasonable under the circumstances. "A person is guilty of menacing a police officer . . . when he or she intentionally places or attempts to place [the] officer . . . in reasonable fear of physical injury . . . or death by displaying a . . . shotgun . . ., whether operable or not" (Penal Law § 120.18; see People v Williams, 98 AD3d 1279, 1279 [2012], lv denied 20 NY3d 1066 [2013]). "Intent may be inferred from a defendant's conduct and from the surrounding circumstances" (People v McCottery, 90 AD3d 1323, 1324 [2011], lv denied 19 NY3d 975 [2012] [internal quotation marks and citations omitted]).

The trial testimony established that, on the morning of November 30, 2009, a state trooper responded to a 911 call from defendant's mother reporting a domestic dispute at her residence. While speaking with defendant's mother inside the enclosed porch of the residence, the trooper heard defendant yell for him to get off the property. As the trooper descended the steps of the porch, he turned to see defendant — who had appeared on the porch — holding a shotgun "pointed in [his] direction." The trooper testified that he immediately drew his sidearm and repeatedly ordered defendant to drop his gun. Defendant refused, lowered the shotgun, pointed it toward the ground and turned away from the trooper. Defendant then turned slightly back toward the trooper and raised the gun approximately eight inches before pointing it back down and moving quickly off of the porch and toward the back of the house.

By this time, a second trooper had arrived at the scene. They both took cover behind the edge of the porch and subsequently behind a vehicle parked in the driveway while continuing to demand that defendant drop his weapon. According to the troopers, defendant entered and exited the rear door of the residence at least twice holding the shotgun, although not pointing it at them, while repeatedly yelling for the officers to "come and get the gun . . . from him." Defendant then came to the edge of the driveway approximately 15 to 20 feet from the troopers, racked the shotgun multiple times and stated that it was not loaded. Believing defendant's weapon to be unloaded,

both troopers attempted to approach defendant, who moved quickly behind a detached garage and out of sight for approximately 5 to 10 seconds before passing back into the house with the gun. According to one of the troopers, this was enough time for defendant to load the shotgun. Defendant again came to the edge of the driveway, this time unarmed, and was ultimately arrested after a struggle with the troopers. Upon searching defendant, the troopers found five bird-shot shotgun shells in his pocket. When the shotgun was seized from within the residence, it was not loaded. One of the troopers testified that, during this incident, he "was very concerned for [his] welfare" and "[s]cared that [he] might get shot," while the other trooper stated that he was "worried that somebody was going to get hurt or shot."

Defendant does not challenge the troopers' account of the incident, instead noting that he never directly pointed the shotgun at either trooper and, with one brief exception, carried the gun pointed upward in a "port arms" position without ever placing his finger on the trigger. However, upon viewing the evidence in the light most favorable to the People, we find a valid line of reasoning and permissible inferences from which the jury could have rationally concluded that defendant intended to place the two troopers in fear of physical injury or death and that such fear on their part was reasonable (see People v Williams, 98 AD3d at 1279-1280; People v McCottery, 90 AD3d at 1324-1325). Further, after weighing the relative probative force of the testimony and the strength of the conflicting inferences to be drawn therefrom, we are unpersuaded that the jury's verdict is against the weight of the evidence (see People v Principio, 107 AD3d 1572, 1573 [2013], lv denied 22 NY3d 1090 [2014]; People v McCottery, 90 AD3d at 1324-1325; People v Beverly, 74 AD3d 1480, 1481 [2010], lv denied 15 NY3d 802 [2010]).

Defendant next asserts that County Court erred in denying his motion to suppress the shotgun because the warrantless entry into his mother's residence was without her consent and no emergency circumstances existed. Even assuming that suppression of the shotgun was warranted, we find that any such error is harmless beyond a reasonable doubt (see People v Moon, 279 AD2d 804, 805 [2001], lv denied 96 NY2d 803 [2001]; People v Maldonado, 75 AD2d 558, 559 [1980]). In light of the

uncontroverted and overwhelming evidence of defendant's guilt, "there is no reasonable possibility that any error permitting the shotgun itself to be admitted into evidence . . . in any way contributed to [defendant's] convictions" (People v Moon, 279 AD2d at 806; see People v Crimmins, 36 NY2d 230, 237 [1975]; People v Wells, 143 AD2d 708, 709 [1988], lv denied 73 NY2d 861 [1988]; compare People v Levan, 62 NY2d 139, 145-146 [1984]).

Nor was defendant denied the effective assistance of counsel. Defendant faults counsel for failing to object to the verdict convicting him of menacing a police officer as being repugnant, given his acquittal on the charge of criminal possession of a weapon in the third degree. However, because the jury could have determined that an unloaded shotgun did not constitute a dangerous or deadly instrument under the present circumstances, acquittal of the weapon possession charge did not negate an element of the crime of menacing a police officer (see Penal Law §§ 10.00 [12], [13]; 120.18; 265.01 [2]; 265.02 [1]; People v Peralta, 3 AD3d 353, 355 [2004], lv denied 2 NY3d 764 [2004]; People v Wilson, 252 AD2d 241, 248-249 [1998]; People v Wood, 10 AD2d 231, 234 [1960]). Nor can counsel be deemed ineffective for failing to object to County Court's adequate apprisal of defendant's Antommarchi rights (see People v Flinn, 22 NY3d 599, 601-602 [2014]; People v Hoppe, 96 AD3d 1157, 1157-1158 [2012], lv denied 19 NY3d 1026 [2012]). Viewed in its entirety, the record reveals that counsel made appropriate motions, thoroughly cross-examined the witnesses, elicited testimony favorable to defendant, made cogent opening and closing statements, obtained a dismissal of one count of the indictment and secured an acquittal on another count. Considering the totality of the circumstances, we find that defendant was afforded meaningful representation (see People v Benevento, 91 NY2d 708, 712 [1998]; People v Baldi, 54 NY2d 137, 146-147 [1981]).

Finally, defendant was not deprived of a fair trial based on the People's failure to turn over a tape recording of his mother's 911 call. The People provided sufficient proof that the tape recording was inadvertently destroyed and there is no reasonable possibility that such evidence would have affected the jury's verdict (see People v Fuentes, 12 NY3d 259, 263 [2009];

People v Auleta, 82 AD3d 1417, 1420-1421 [2011], lv denied 17 NY3d 813 [2011]; People v Vancleave, 286 AD2d 941, 941 [2001], lv denied 97 NY2d 689 [2001], cert denied 537 US 1052 [2002]). Defendant's remaining contentions have been reviewed and found to be without merit.

Rose, Egan Jr., Lynch and Devine, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court