People v Benjamin (2020 NY Slip Op 02952)





People v Benjamin


2020 NY Slip Op 02952


Decided on May 21, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 21, 2020

110157

[*1]The People of the State of New York, Respondent,
v
Kenneth D. Benjamin III, Appellant.

Calendar Date: March 27, 2020

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Reynolds Fitzgerald, JJ.


John R. Trice, Elmira, for appellant.
Matthew VanHouten, District Attorney, Ithaca (Emily Perks Quinlan of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Tompkins County (Miller, J.), rendered December 1, 2017, upon a verdict convicting defendant of the crimes of menacing a police officer or peace officer, menacing in the second degree, criminal possession of a weapon in the fourth degree and endangering the welfare of a child.
Defendant was charged by indictment with menacing a police officer or peace officer, menacing in the second degree, criminal possession of a weapon in the fourth degree and endangering the welfare of a child based upon allegations concerning an incident that took place in February 2017 when defendant allegedly brandished a weapon at a Tompkins County Deputy Sheriff (hereinafter the deputy) and another person (hereinafter child's father) in the presence of the child. Following a jury trial, defendant was convicted on all counts and sentenced to concurrent prison terms, the greatest of which was four years followed by three years of postrelease supervision for his conviction of menacing a police officer or peace officer. Defendant appeals.
Defendant contends that the jury's verdict as to the menacing charges and the endangering charge was against the weight of the evidence. "In determining whether [the] defendant's convictions were against the weight of the evidence, we first must determine whether a different result would have been unreasonable; if not, we then weigh conflicting testimony, reviewing any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the Court then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt" (People v Jasiewicz, 162 AD3d 1398, 1399 [2018] [internal quotation marks, brackets and citation omitted], lv denied 32 NY3d 1005 [2018]). "In conducting a weight of the evidence analysis, [this Court] must give deference to the jury's credibility assessments" (People v Anatriello, 161 AD3d 1383, 1385 [2018] [citation omitted], lv denied 31 NY3d 1144 [2018]).
Regarding the two menacing charges, defendant asserts that the evidence failed to establish that he intended to place or attempted to place the deputy or the child's father in reasonable fear of physical injury. "A person is guilty of menacing a police officer or peace officer when he or she intentionally places or attempts to place a police officer or peace officer in reasonable fear of physical injury, serious physical injury or death by displaying a . . . rifle . . . or other firearm, whether operable or not, where such officer was in the course of performing his or her official duties and the defendant knew or reasonably should have known that such victim was a police officer or peace officer" (Penal Law § 120.18). "A person is guilty of menacing in the second degree when . . . [h]e or she intentionally places or attempts to place another person in reasonable fear of physical injury . . . or death by displaying . . . what appears to be a . . . rifle . . . or other firearm" (Penal Law § 120.14 [1]).
The trial testimony established that the deputy received a dispatch to aid the child's father in removing the child — defendant's nephew — from a residence in the Town of Enfield, Tompkins County. The deputy, dressed in uniform and driving a vehicle with Tompkins County Sheriff emblazoned on it, arrived at the residence before the child's father and observed defendant exit a silver Honda Civic and enter the residence. Shortly thereafter, the child's father arrived at the residence and gave the deputy a court order authorizing him to remove the child. While the deputy was reading the order, the child's mother — defendant's sister — confronted the child's father, striking him in the chest and yelling "don't take my little boy." The deputy commanded defendant's sister to go inside the house, and she complied. Defendant then came running out of the house and attempted to punch the child's father in the face. Defendant then went to his car, reached into it and pulled out a rifle. Although the evidence would later establish that the gun was not capable of firing bullets, the deputy testified that she did not know this at the time. The deputy further testified that she was standing approximately three to five feet from defendant when he pointed the rifle at her hip or abdominal area and at the child's father, who was standing approximately 10 to 15 feet away from her. She further stated that the event was "shocking" and it made her "very nervous and scared." The child's father testified similarly, stating that, when he arrived at the residence to retrieve the child, defendant's sister charged at him, punching him in the chest. He stated that she then went back into the house and defendant came outside, attempted to strike him and, when this attempt proved futile, defendant retrieved a rifle from the back seat of the car and charged him and the deputy. He further averred that defendant "definitely" pointed the rifle at him and the deputy, and that he feared for his safety and believed that defendant was going to shoot him and that the deputy was going to shoot defendant.
Defendant called three witnesses. A tenant of the residence testified that he saw defendant holding the rifle while the deputy was present, but he did not recall whether defendant aimed the rifle in the direction of the deputy or the child's father. Defendant's niece testified that defendant retrieved the rifle from the car, but pointed it at his feet and walked into the house, and he did not point the rifle at the deputy or the child's father. Finally, defendant's sister testified that defendant carried the rifle from the car to the inside of the residence with the barrel facing upwards.
Although a different verdict would not have been unreasonable based on the inconsistent versions of whether defendant pointed the rifle at the deputy and the child's father, viewing the evidence in a neutral light and deferring to the jury's credibility determinations (see People v Watkins, 180 AD3d 1222, 1231 [2020], we find that these convictions were not against the weight of the evidence. It is undisputed that defendant grabbed the rifle from the car during a heated dispute with the deputy and the child's father and he did so in their presence. Both the deputy and the child's father testified that the rifle was pointed at them and they feared for their safety. "Intent may be inferred from a defendant's conduct and from the surrounding circumstances" (People v McCottery, 90 AD3d 1323, 1324 [2011] [internal quotation marks and citations omitted], lv denied 19 NY3d 975 [2012]; see People v Ullah, 130 AD3d 759, 760 [2015], lv denied 26 NY3d 1043 [2015]).
As to his conviction for endangering the welfare of a child, defendant contends that there was no proof establishing that the child saw any of the confrontation that occurred outside of the residence. "A person is guilty of endangering the welfare of a child when . . . [h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than [17] years old" (Penal Law § 260.10 [1]). The deputy testified that, when defendant went into the residence, she pursued him and found the rifle to the left of the open main doorway entrance where there were three or four children who had been watching the situation unfold. She had her taser unholstered and displayed when defendant complied with her commands to put his hands in the air. The deputy further testified that the children were all "hysterical"; they cried, grasped onto defendant's sister and tried to shut the door on the deputy. The child's father testified that, during the incident, the child was holding on to his mother's leg, scared and crying. A jury could reasonably conclude that this tense and hostile confrontation involving weapons was likely to be injurious to the physical, mental or moral welfare of the child. Giving deference to the jury's credibility determinations, we find that the verdict as to this conviction was not against the weight of credible evidence (see People v Santana, 179 AD3d 1299, 1301 [2020]).
Lastly, defendant argues that his sentence was harsh and excessive because no physical harm came to anyone and because of his traumatic background. "Sentencing generally rests within the discretion of the trial court and a legally permissible sentence will not be disturbed absent an abuse of the sentencing court's discretion or extraordinary circumstances" (People v Turner, 172 AD3d 1768, 1773 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 930 [2019]). The record discloses that County Court took into consideration statements from defendant's friends and family, and his traumatic childhood, criminal history and drug abuse, while explaining to defendant that he did not show remorse, lacked concern over his dangerous conduct and the deputy's well-being and that his anger is problematic. Under the circumstances, there are no extraordinary circumstances or abuse of discretion warranting a reduction of the sentence.
Garry, P.J., Egan Jr., Lynch and Mulvey, JJ., concur.
ORDERED the judgment is affirmed.