People v Rahaman (2020 NY Slip Op 07252)





People v Rahaman


2020 NY Slip Op 07252


Decided on December 3, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 3, 2020

112022

[*1]The People of the State of New York, Respondent,
v
Cendno Rahaman, Appellant.

Calendar Date: October 13, 2020

Before: Egan Jr., J.P., Mulvey, Aarons and Pritzker, JJ.


Steven M. Sharp, Albany, for appellant.
Karen A. Heggen, District Attorney, Ballston Spa (Gordon W. Eddy of counsel), for respondent.



Aarons, J.
Appeal from a judgment of the County Court of Saratoga County (Murphy III, J.), rendered August 2, 2019, upon a verdict convicting defendant of the crimes of attempted assault in the first degree (three counts), assault in the second degree, attempted murder in the second degree and tampering with physical evidence.
While the victim was out late with his girlfriend and his friend one night in August 2018, they encountered defendant and became involved in a verbal altercation. The verbal altercation subsequently escalated to a physical one. Defendant swung a knife at the girlfriend and the friend, but he missed striking them. Defendant, however, stabbed the victim in the head and wrist. Defendant was thereafter charged with multiple crimes in connection with this incident. Following a jury trial, defendant was convicted of three counts of attempted assault in the first degree (counts 1, 2 and 4), assault in the second degree (count 6), attempted murder in the second degree (count 5) and tampering with physical evidence (count 7). County Court sentenced defendant to a term of imprisonment followed by a period of postrelease supervision. Defendant appeals.
Defendant argues that the verdict convicting him of attempted murder in the second degree, the three counts of attempted assault in the first degree and tampering with physical evidence was not based upon legally sufficient evidence or, in the alternative, was against the weight of the evidence. To the extent that defendant directs his legal sufficiency argument at the three counts of attempted assault in the first degree, he failed to preserve it because he only made a general motion to dismiss with respect to these specific counts (see People v Splunge, 159 AD3d 1136, 1136 [2018]; People v Stacconi, 151 AD3d 1395, 1396 [2017]). Although defendant did make a specific motion as to the counts of attempted murder in the second degree and tampering with physical evidence, he failed to renew his motion at the close of all proof. Accordingly, defendant's legal sufficiency argument is also unpreserved as to these counts (see People v Sloley, 179 AD3d 1308, 1309 n 2 [2020], lv denied 35 NY3d 974 [2020]; People v Hilton, 166 AD3d 1316, 1317 [2018], lv denied 32 NY3d 1205 [2019]), and we decline defendant's request to exercise our interest of justice jurisdiction (see People v Lucas, 25 AD3d 822, 823 [2006], lv denied 6 NY3d 815 [2006]).
Regarding defendant's weight of the evidence claim, where, as here, a contrary result would not have been unreasonable, we "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Wilson, 164 AD3d 1012, 1014 [2018]; see People v Mamadou, 172 AD3d 1524, 1524 [2019], lv denied 33 NY3d 1106 [2019]; People v Arhin, 165 AD3d 1487, 1488 [2018]). When undertaking a weight of the evidence analysis, we view the evidence in a neutral light and defer to the jury's assessment of the credibility of the witnesses (see People v Benjamin, 183 AD3d 1125, 1128 [2020]; People v Gill, 168 AD3d 1140, 1140-1141 [2019]). That said, defendant premises his weight of the evidence claim on the basis that the proof failed to show that he possessed the requisite intent to commit the challenged crimes. "Criminal intent may be inferred from the totality of the circumstances or from the natural and probable consequences of the defendant's conduct" (People v Conway, 179 AD3d 1218, 1219 [2020] [internal quotation marks, ellipsis, brackets and citations omitted], lv denied 35 NY3d 941 [2020]; see People v Pine, 126 AD3d 1112, 1114 [2015], lv denied 27 NY3d 1004 [2016]).
As to the conviction for attempted murder in the second degree, the trial evidence establishes that, after the victim tripped and fell while trying to run away from defendant, defendant got on top of him with a knife. According to the victim, defendant began "stabbing and swing[ing] at [his] head" with [*2]the knife. This attack did not stop even after the victim's friend hit defendant on the head with a bottle. The victim stated that he was "fighting for [his] life" but was eventually able to escape. The victim was "bleeding a lot" and he was treated at the hospital for his injuries. A surgeon testified that the victim had "active bleeding" from one of the head lacerations that required the blood vessel to be tied off. The surgeon further explained that if the blood vessel was not tied off, it would continue to bleed to the point where the victim could go into shock. Although defendant contends that the victim's injuries were minor, "[t]he absence of a long-term serious injury to a victim does not preclude the finding of life-threatening actions by a defendant" (People v Ryder, 146 AD3d 1022, 1024 [2017], lv denied 29 NY3d 1086 [2017]). Viewing the testimonial evidence, as well as the videos and photographs, in a neutral light, the conviction for attempted murder in second degree was supported by the weight of the evidence (see Penal Law §§ 110.00, 125.25 [1]; People v Greenfield, 167 AD3d 1060, 1062 [2018], lv denied 32 NY3d 1204 [2019]; People v Salce, 124 AD3d 923, 925-926 [2015], lv denied 25 NY3d 1207 [2015]).
The convictions for the three counts of attempted assault in the first degree likewise were not against the weight of the evidence (see Penal Law §§ 110.00, 120.10 [1]; People v Gill, 168 AD3d at 1142; People v Andrews, 78 AD3d 1229, 1230-1231 [2010], lv denied 16 NY3d 827 [2011]). In addition to the foregoing proof with respect to the attack on the victim, the record discloses that defendant swung the knife at the friend's midsection. The friend stated that defendant "took a good swing" at him and that defendant came within three inches of striking him. The record also discloses that defendant chased the girlfriend and swung the knife at her while she was cornered in a vestibule area of a bar. The girlfriend stated that the knife came "[v]ery close" to her head. Taking into account that intent may be inferred by the manner in which defendant used the knife (see People v Lewis, 46 AD3d 943, 945 [2007]), defendant's argument with respect to the convictions for these three counts is without merit.
Regarding the conviction for tampering with physical evidence, the record indicates that defendant, as he fled the scene, threw the knife below street level in a dark vestibule and that it was eventually discovered with the aid of a flashlight. Viewing the evidence in a neutral light and the conflicting inferences that may be drawn therefrom, we cannot say that the conviction for tampering with physical evidence was against the weight of the evidence (see Penal Law § 215.40 [2]; People v Maull, 167 AD3d 1465, 1466 [2018], lvs denied 33 NY3d 948, 951 [2019]; People v Neulander, 162 AD3d 1763, 1764-1765 [2018], affd 34 NY3d 110 [2019]; People v Whitehead, 119 AD3d 1080, 1081 [2014], lv denied 24 NY3d 1048 [2014]).
Defendant maintains that he was extremely intoxicated at the time of the incident at issue and, therefore, he lacked the requisite intent to commit the challenged crimes. There was evidence as to how much alcohol defendant had consumed prior to the altercation, as well as conflicting evidence regarding defendant's level of intoxication at the time of the altercation. The jury heard this evidence and apparently found that defendant's intoxication did not negate the element of intent. Because we see no basis to disturb the jury's finding in this regard, defendant's argument is unpersuasive (see People v Oshintayo, 163 AD3d 1353, 1356-1357 [2018], lv denied 32 NY3d 1006 [2018]; People v Shuler, 100 AD3d 1041, 1043 [2012], lv denied 20 NY3d 988 [2012]).
Defendant also argues that the audio portion from the body camera video of the responding police officers should have been excluded as inadmissible hearsay. We disagree. The statements made in the video were not being offered for their truth but to explain what the police officers did and did not do as part of their investigation into the incident at issue (see People v McCottery, 90 AD3d 1323, 1325 [2011], lv denied 19 NY3d 975 [2012]; People v Carney, 18 AD3d 242, 243 [2005], lv denied 5 NY3d 882 [2005]). In addition, County Court, on multiple occasions, provided the jury with a limiting instruction (see People v McCottery, 90 AD3d at 1325; People v Davis, 23 AD3d 833, 835 [2005], lv denied 6 NY3d 811 [2006]). Accordingly, reversal is not warranted on this basis (see People v Gregory, 78 AD3d 1246, 1246-1247 [2010], lv denied 16 NY3d 831 [2011]). Furthermore, even if the court erred in admitting the audio portion from the video, any error was harmless (see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]).
Defendant contends that County Court failed to conduct a further inquiry to determine whether the jury foreperson was grossly unqualified to serve. "To decide whether a juror is grossly unqualified, the trial court must conduct a probing and tactful inquiry and exercise its discretion to determine whether the context of the entire colloquy reveals an obviously partial state of mind and convincingly demonstrates that the sworn juror cannot render an impartial verdict" (People v Crider, 176 AD3d 1499, 1500 [2019] [internal quotation marks, brackets and citations omitted], lv denied 34 NY3d 1157 [2020]; see People v Green, 127 AD3d 1473, 1474-1475 [2015], lvs denied 27 NY3d 965, 969 [2016]). We defer to the trial court's determination regarding whether a juror is grossly unqualified in view of its superior position to assess the partiality of a juror (see People v Kuzdzal, 31 NY3d 478, 483 [2018]; People v Montes, 178 AD3d 1283, 1288 [2019], lv denied 34 NY3d 1161 [2020]; People v Leader, 285 AD2d 823, 824 [2001], lvs denied 97 NY2d 756, 758 [2002]).
After summations, but prior to when County Court charged the jury, juror No. 116 stated, "I wonder once all of this is over if we will see the sentencing on the news. I don't want to have gone through all of this and not know what happened." Juror No. 116 was subsequently discharged. County Court then individually questioned each juror. When the court asked the foreperson whether she had heard a remark by juror No. 116, the foreperson responded, "Not that I recall." The foreperson further responded that nothing that any of the jurors have said had caused her to form an opinion about defendant's guilt and that she has followed, and could continue to follow, the court's instructions about not discussing the case during the trial. After the court questioned all of the jurors, defendant requested a mistrial or, alternatively, for a further inquiry of the foreperson. The request stemmed from a perceived discrepancy between the foreperson's answer that she did not recall a remark by juror No. 116 and juror No. 7's answer that the foreperson had made a comment in response to juror No. 116's remark. The court, however, found that the jurors provided truthful responses and took the foreperson's word at face value that she did not recall any comment by juror No. 116. Given that the record discloses that the court conducted a probing and tactful inquiry (see People v Robinson, 121 AD3d 1179, 1181 [2014]) and deferring to its credibility determination that the foreperson could remain [*3]impartial and did not hear juror No. 116's remark (see People v Green, 127 AD3d at 1475), the court did not err in denying defendant's request for a mistrial.[FN1]
Defendant argues that the imposed sentence was harsh and excessive.[FN2] He was sentenced to concurrent terms of imprisonment, the greatest of which was 25 years, to be followed by five years of postrelease supervision, for the convictions of attempted assault in the first degree (count 4), attempted murder in the second degree (count 5), assault in the second degree (count 6) — charges that relate to the attack on the victim — and tampering with physical evidence (count 7). The sentences for these counts were to run consecutively to the sentence of seven years, to be followed by five years of postrelease supervision, which was imposed for the conviction of attempted assault in the first degree (count 1) — a charge relating to the attack on the friend. Defendant was also sentenced to another consecutive term of imprisonment of eight years, to be followed by five years of postrelease supervision, for the conviction of attempted assault in the first degree (count 2), which relates to the attack on the girlfriend. After consideration of all the relevant factors and the circumstances of this case, we deem it appropriate to reduce the 40-year aggregate sentence in the interest of justice by directing that all sentences run concurrently to each other (see CPL 470.15 [6] [b]; People v Anderson, 149 AD3d 1407, 1416 [2017], lv denied 30 NY3d 947 [2017]; People v Collazo, 45 AD3d 899, 901 [2007], lv denied 9 NY3d 1032 [2008]; People v Smith, 309 AD2d 1081, 1083 [2003]; People v Sheppard, 273 AD2d 498, 500 [2000], lv denied 95 NY2d 908 [2000]; see generally People v Delgado, 80 NY2d 780, 783 [1992]). Defendant's remaining contentions have been examined and are without merit.
Egan Jr., J.P., Mulvey and Pritzker, JJ., concur.
ORDERED that the judgment is modified, as a matter of discretion in the interest of justice, by directing that all sentences imposed upon defendant run concurrently to one another, and, as so modified, affirmed.



Footnotes

Footnote 1: Contrary to the People's claim, the argument is preserved inasmuch as defendant moved for a mistrial upon the completion of the individual questioning of all jurors — i.e., after juror No. 7 gave a response about the foreperson and at a time when County Court still could have taken action (see CPL 470.05 [2]).

Footnote 2: Defendant's claim that he was punished for exercising his right to a trial because the imposed sentence greatly exceeded what was offered in a plea offer is unpreserved for review (see People v Hurley, 75 NY2d 887, 888 [1990]).