People v Smith (2022 NY Slip Op 00217)





People v Smith


2022 NY Slip Op 00217


Decided on January 13, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 13, 2022

110803
[*1]The People of the State of New York, Respondent,
v
Ronald Smith, Also Known as Tubbs, Appellant.

Calendar Date:November 18, 2021

Before:Garry, P.J., Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Theodore J. Stein, Woodstock, for appellant.
Meagan K. Galligan, District Attorney, Monticello (Lisa M. Bondarenka of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Sullivan County (LaBuda, J.), rendered September 18, 2018, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the second degree, criminal possession of a controlled substance in the third degree (four counts), tampering with physical evidence, conspiracy in the second degree and conspiracy in the fourth degree.
Seven undercover controlled buys led to the execution of a no-knock search warrant on September 18, 2017 at an apartment in the Town of Fallsburgh, Sullivan County. Once inside the apartment, officers discovered large quantities of heroin and drug paraphernalia. At the same time, an officer stationed at the rear of the apartment observed two bundles, which were later discovered to be heroin, being thrown out of a window located at the rear of the apartment. Thereafter, a search was performed at a Budget Inn motel room linked to defendant and additional quantities of heroin were recovered. As a result, defendant was charged with criminal sale of a controlled substance in the second degree, criminal possession of a controlled substance in the third degree (four counts), tampering with physical evidence, conspiracy in the second degree and conspiracy in the fourth degree. Following a jury trial, defendant was convicted as charged and sentenced, as a persistent felony offender, to an aggregate prison term of 35 years to life. Defendant appeals.
Defendant contends that the jury verdict is not supported by legally sufficient evidence and is against the weight of the evidence. Initially, the legal sufficiency claim is unpreserved as defendant failed to move for a trial order of dismissal (see People v Cooper, 196 AD3d 855, 858 [2021]; People v Kelsey, 174 AD3d 962, 962 [2019], lv denied 34 NY3d 982 [2019], cert denied ___ US ___, 141 S Ct 2607 [2021]). "However, a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the crimes" (People v Kelsey, 174 AD3d at 962 [internal quotation marks and citations omitted]; see People v Baber, 182 AD3d 794, 795 [2020], lv denied 35 NY3d 1064 [2020]). "In conducting a weight of the evidence review, we must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Barzee, 190 AD3d 1016, 1017 [2021] [internal quotation marks and citations omitted], lv denied 36 NY3d 1094 [2021]; see People v Hilton, 185 AD3d 1147, 1148 [2020], lv denied 35 NY3d 1095 [2020]).
Defendant's contention that the verdict was against the weight of the evidence centers largely on his claim that his son's testimony is unreliable. During the [*2]trial, defendant's son testified that he moved to Sullivan County in February 2017 in order to reside with his father. Approximately one to two weeks after the son's arrival, defendant was arrested and detained at the Sullivan County jail. Thereafter, defendant requested that his son operate defendant's heroin enterprise while he was in jail. The son stated that defendant initially provided him with 20 bags of heroin that were hidden in the apartment, and further directed him to sell single units to defendant's customers. As the son acquired increasingly larger amounts of heroin to sell, defendant instructed him to move a portion of the heroin to a room at the Budget Inn in order to limit the amount of heroin located in any one place. The son testified that when his father was released from jail, he moved into the apartment with him. The son further testified that, on the day the search warrant was executed, he and his two friends were in the living room of the apartment while defendant and his girlfriend were in defendant's bedroom located at the rear of the apartment.
An assistant jail administrator with the Sullivan County Sheriff's Office testified that he made copies of all of defendant's telephone calls between defendant and his son while incarcerated. The telephone calls were played for the jury and the son explained the contents of the calls. The son testified that defendant's reference to a "blue phone" was to the iPhone4 that defendant had left for the son to use as "[t]he work phone." In one call, defendant instructed the son to collect money owed to him by his customers and to manage the business until defendant was released from detention. During another call, defendant instructed the son to put certain money in a safe located at his mother's residence. The son explained that when defendant mentioned "stepping up" he was indicating that the son should increase both the amount of drugs and the number of clients in order to make more money. One call involved a discussion wherein defendant instructed the son to purchase heroin in unbagged form and instructed the son as to how he should properly cut and bag the heroin. During some of the phone calls, the son can be heard asking defendant about specific customers and whether it was safe to sell to these individuals, and defendant advised him not to sell to at least one of the individuals.
An investigator with the State Police testified that while he was surveilling the apartment on September 6, 2017, defendant had approached a vehicle and appeared to be engaging in a narcotics transaction. An investigator with the Community Narcotics Enforcement Team testified as an expert in coded language used in narcotics investigations. He also testified that he made seven undercover purchases of heroin from the son between June and September 2017 at the apartment location.[FN1] He stated that he began his investigation of defendant based on information from a confidential informant regarding [*3]a "large-scale heroin drug trafficking organization operating in Sullivan County" run by defendant's son, at defendant's direction, while defendant was detained. The investigator opined that the information given to him by the confidential informant was corroborated by the County Jail telephone calls between defendant and the son, as well as the controlled undercover purchases. Lastly, the investigator testified as to text messages between himself and the son and explained that the phrase "same DVDs" or "same CDs" means that he desired to buy the same product as his last purchase, the phrase "the new jack" was in reference to the son's new telephone number and a "chicken" or "full bird" refers to a kilogram of heroin. Lastly, the investigator testified that he sent a text message to the son on September 18, 2017 to arrange the purchase of 20 bricks [FN2] of heroin to take place at the apartment on the same day that the search warrant was effectuated.
A second investigator with the State Police testified that she was one of the officers who executed the search warrant at the apartment. Specifically, she was assigned to perimeter security and was stationed at the left rear corner of the building. When the warrant was executed, she heard yelling and observed "two African-American hands come out and throw something out [of] the window" onto the ground. Shortly thereafter, she located the two bundles of what was later confirmed to be heroin. A detective with the Town of Fallsburg Police Department testified that he participated in the no-knock search of the apartment and entered shortly after the FBI breached the door. He stated that he observed the son and his two friends in the living room and defendant and his girlfriend in defendant's back bedroom located in the left, rear corner of the apartment. The detective further testified that he observed an iPhone, a Budget Inn motel room key, cash on the son's friend, a Shop-Rite plastic bag on the living room floor that appeared to contain bricks of heroin and white bags of heroin in a pair of jeans located near the couch.
A second investigator with the Community Narcotics Enforcement Team testified that he was assigned to collect all evidence recovered from the scene. He stated that he collected two bundles of what was later determined to be heroin on the grounds outside the apartment. Inside the apartment, he recovered 22 bricks of heroin, hypodermic needles, glassine envelopes and a digital scale. The investigator further testified that he recovered $3,481 in cash, $1,506 of which was located in the bedroom occupied by defendant. An investigator with the Special Investigations Unit of the State Police testified that he executed a search of the Budget Inn motel room wherein he recovered 31 bricks of heroin. A forensic scientist with Mid-Hudson Satellite Crime Laboratory testified that the substances seized tested positive for the presence of either heroin or fentanyl and that two of the substances [*4]had an aggregate weight in excess of one-half ounce.
As to the criminal sale conviction, defendant contends that there was no direct evidence of his intent to sell. The People presented evidence that defendant directed and instructed his son to make arrangements to sell heroin to the undercover officer. Additionally, a brick of heroin was located in defendant's bedroom. Although a different verdict would not be unreasonable if the jury chose not to credit the son's testimony, as he agreed to assist the People in exchange for a favorable sentence, these issues were fully explored at trial and presented credibility assessments for the jury to resolve. Such assessments are entitled to deference, and we accord same (see People v Arce-Santiago, 154 AD3d 1172, 1175 [2017], lv denied 30 NY3d 1113 [2018]). As to intent, the jury could infer defendant's intent to sell the heroin from the substantial quantity of heroin recovered, the presence of a scale and wrapping materials, along with the large sums of cash (see People v Montford, 145 AD3d 1344, 1346-1347 [2016], lv denied 29 NY3d 999 [2017]; People v Crooks, 129 AD3d 1207, 1209 [2015], affd 27 NY3d 609 [2016]. We are satisfied that the guilty verdict on the criminal sale count is supported by the weight of the evidence (see People v Nichol, 121 AD3d 1174, 1177 [2014], lv denied 25 NY3d 1205 [2015]).
As to the four criminal possession convictions, defendant contends that there is no direct evidence that he possessed the heroin. Several detectives testified that heroin was recovered from both the apartment and the motel. The son testified that defendant was living with him in the apartment and that it was defendant's bedroom closet where one of the bricks of heroin was recovered. Because "constructive possession is proven by demonstrating that a defendant exercised dominion and control over the location where contraband was found, and exclusive access is not required" (People v Nichol, 121 AD3d at 1177), the jury could infer that "defendant exercised dominion or control over the apartment . . . where the contraband was found, so as to establish his knowing possession thereof" (People v Shabazz, 177 AD3d 1170, 1172 [2019]). As to the heroin seized from the motel, this possession count was supported by the son's testimony that defendant instructed him to move some of the heroin out of the apartment because there was too much there and defendant's statements made during the telephone calls from jail, establishing constructive possession of the controlled substance (see People v Daddona, 81 NY2d 990, 992 [1993]).
As to the conviction for tampering with physical evidence, defendant contends that the investigator did not provide specific details as to the location of the apartment and one detective did not testify where defendant was when he initially entered the apartment. The People presented testimony by the investigator who observed African-American hands toss two large bundles of heroin out [*5]the window and she quickly discovered the bundles on the cement walkway and grass. Additionally, there was testimony by a detective and the son that defendant and his girlfriend [FN3] were in the back bedroom while the other individuals were in the living room. Although a different verdict would not have been unreasonable as there was no eyewitness to defendant throwing the bundles out of the window, "[v]iewing the evidence in a neutral light and the conflicting inferences that may be drawn therefrom, we cannot say that the conviction for tampering with physical evidence was against the weight of the evidence" (People v Rahaman, 189 AD3d 1709, 1712 [2020], lv denied 36 NY3d 1059 [2021]; People v Whitehead, 119 AD3d 1080, 1081 [2014], lv denied 24 NY3d 1048 [2014]).
Lastly, as to defendant's convictions for conspiracy in the second degree and conspiracy in the fourth degree, defendant contends that there is no direct evidence that he was involved in a conspiracy. The People presented direct evidence of defendant's participation in the drug trafficking conspiracy through the son's testimony relative to the directives and instructions from defendant and the recorded telephone calls between defendant and the son while defendant was detained. Once again, the jury chose to credit the testimony of the son and we will defer to the jury's credibility determination. Accordingly, we find that defendant's conviction was not against the weight of the evidence (see People v Brown, 163 AD3d 1170, 1172 [2018]; People v Williams, 150 AD3d 1315, 1319 [2017], lv denied 30 NY3d 984 [2017]; People v Portis, 129 AD3d 1300, 1302 [2015], lvs denied 26 NY3d 1088, 1091 [2015]).
Garry, P.J., Lynch, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: With the exception of one purchase, the purchases took place at a sign located at the entrance to the apartment complex or in the parking lot near the apartment.

Footnote 2: A brick is 50 bags of heroin.

Footnote 3: The girlfriend was not a person of color and therefore did not match the description of the person that the State Police investigator observed throwing the bundles out of the window.