People v Gilyard
2026 NY Slip Op 02892
May 7, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,
v
Bilal Gilyard, Also Known as Mitch, Appellant.

Decided and Entered:May 7, 2026
CR-23-1173
Calendar Date: March 25, 2026
Before: Garry, P.J., Reynolds Fitzgerald, Powers, Mackey And Ryba, JJ.

Yorden C. Huban, Public Defender, Albany (James A. Bartosik Jr. of counsel), for appellant.
Letitia James, Attorney General, New York City (James F. Gibbons of counsel), for respondent.

[*1]
Ryba, J.
Appeal from a judgment of the Supreme Court (Roger McDonough, J.), rendered October 24, 2022 in Albany County, upon a verdict convicting defendant of the crimes of conspiracy in the fourth degree and criminal sale of a controlled substance in the third degree.
Defendant and several others were charged in an indictment with various drug-related crimes as the result of an investigation by the Attorney General's Organized Crime Task Force (hereinafter the task force) into a suspected drug trafficking operation led by codefendant Tyshon Harris. Defendant specifically was charged with conspiracy in the second degree and three counts of criminal sale of a controlled substance in the third degree arising from his alleged sale of cocaine on three separate dates in March 2019. At the ensuing jury trial, defendant moved for a trial order of dismissal at the close of the People's proof. Supreme Court denied the motion with respect to the three criminal sale of a controlled substance charges but reserved decision as to the conspiracy charge. Thereafter, the parties stipulated to charge the jury with the lesser included offense of conspiracy in the fourth degree in lieu of conspiracy in the second degree. The jury convicted defendant of conspiracy in the fourth degree and one count of criminal sale of a controlled substance in the third degree related to his conduct on March 24, 2019, but acquitted him of the remaining charges. Defendant, who was 18 years old at the time of the underlying offenses, requested youthful offender status at the time of sentencing. Supreme Court denied the request and sentenced defendant to concurrent prison terms of 1 to 3 years for the conspiracy conviction and eight years, to be followed by two years of postrelease supervision, for the criminal sale of a controlled substance conviction. The sentences were directed to run concurrently with another sentence of eight years in prison, to be followed by three years of postrelease supervision, which was imposed upon defendant's plea of guilty to an unrelated gun possession charge. Defendant appeals.
First addressing defendant's challenges to the legal sufficiency and weight of the evidence to support his convictions, when reviewing the legal sufficiency of a jury verdict, "we view the proof in the light most favorable to the People and determine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crimes proven beyond a reasonable doubt" (People v Stanley, 246 AD3d 1218, 1219 [3d Dept 2026]; see People v Gerhard, 244 AD3d 1313, 1314 [3d Dept 2025], lv denied 45 NY3d 936 [2026]; People v Dillon, 231 AD3d 1352, 1353 [3d Dept 2024]). When assessing the weight of the evidence, we "first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting [*2]inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Smith, 237 AD3d 1367, 1369 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 43 NY3d 1059 [2025]; see People v Bessette, 246 AD3d 1310, 1310 [3d Dept 2026]; People v Gerhard, 244 AD3d at 1314; People v Contompasis, 236 AD3d 138, 141 [3d Dept 2025], lv denied 43 NY3d 1007 [2025]). Notably, when "performing our review, we do not distinguish between direct or circumstantial evidence" (People v Cotto, 231 AD3d 1356, 1357 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 43 NY3d 962 [2025]; see People v Rivera, 212 AD3d 942, 944 [3d Dept 2023], lv denied 39 NY3d 1113 [2023]).
As is relevant here, to establish conspiracy in the fourth degree, the People were required to prove that defendant agreed with at least one other person to commit a class B or class C felony and that he or a coconspirator committed an overt act in furtherance of the conspiracy (see Penal Law §§ 105.10 [1]; 105.20). An overt act is "an independent act that tends to carry out the conspiracy, but need not necessarily be the object of the crime" (People v Drumgold, 206 AD3d 1044, 1047 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1150 [2022]). As the conspiracy charge was premised upon defendant's agreement to commit the class B felony of criminal sale of a controlled substance in the third degree, the People were required to prove that defendant or a coconspirator committed an act which tended to carry out that crime (see Penal Law § 220.39 [1]). In addition, to establish criminal sale of a controlled substance in the third degree, the People were required to prove that defendant "knowingly and unlawfully [sold] . . . a narcotic drug" (Penal Law § 220.39 [1]).
The People's case relied primarily on surveillance footage, cell phone tower records and intercepted communications between defendant, Harris and others involved in a drug distribution operation centered in the City of Albany, including an address known to be the residence of Harris. The intercepted communications showed defendant coordinating with others to obtain narcotics, arrange meetings and respond to customer requests, with law enforcement interpreting the coded language used in those communications based upon training and temporary correlation with surveillance. Surveillance and phone records also placed defendant at or near the subject residence at times consistent with the arranged transactions. A customer to one such transaction with defendant also testified at trial and confirmed that her communications with defendant concerned the purchase of narcotics. Evidence also showed that a subsequent search of one location associated with the operation resulted in the recovery of a quantity of narcotics, as well as contraband indicative of drug distribution.
Initially, defendant forfeited his claim that this [*3]proof was legally insufficient to support his conviction for conspiracy in the fourth degree inasmuch as he consented to a jury charge for that lesser included offense (see People v Strange, 247 AD3d 1358, 1359 [3d Dept 2026]; People v Branton, 238 AD3d 1429, 1430 [3d Dept 2025]). As for defendant's argument that the verdict is against the weight of the evidence, a different verdict may not have been unreasonable in that the jury could have found that defendant did not agree to sell cocaine or that there was no overt act in furtherance of a conspiracy. Nonetheless, viewing the record evidence in a neutral light and affording deference to the jury's credibility determinations, we find that the verdict is supported by the weight of the evidence (see People v Terry, 196 AD3d 840, 845-846 [3d Dept 2021], lv denied 37 NY3d 1030 [2021]; People v Walker, 191 AD3d 1154, 1158 [3d Dept 2021], lv denied 37 NY3d 961 [2021]). While defendant argued at trial that the recorded conversations had no drug-related meaning, the People's proof that the conversations contained coded terminology customarily used in drug transactions was a sufficient basis from which a rational jury could infer defendant's agreement to engage in the sale of cocaine (see People v Stanley, 246 AD3d at 1220-1221; People v Chambers, 185 AD3d 1141, 1144-1145 [3d Dept 2020], lv denied 36 NY3d 1055 [2021]). Moreover, contrary to defendant's contention, the People were not required to prove that he personally committed an overt act in furtherance of the conspiracy but could instead rely upon overt acts committed by his coconspirators, including Harris (see Penal Law § 105.20; People v Turner, 178 AD3d 70, 73-74 [3d Dept 2019]). Giving due deference to the jury's decision to resolve credibility issues in the People's favor, the verdict finding defendant guilty of conspiracy in the fourth degree is not against the weight of the evidence (see People v Law, 231 AD3d 1306, 1308 [3d Dept 2024], lv denied 42 NY3d 1053 [2024]; People v Smith, 201 AD3d 1126, 1132 [3d Dept 2022], lv denied 38 NY3d 1035 [2022]; People v Turner, 178 AD3d at 73-74).
Moreover, defendant's conviction for criminal sale of a controlled substance in the third degree is supported by legally sufficient evidence and the verdict is not against the weight of the evidence. Proof of defendant's intercepted communications with Harris and the cocaine customer on March 24, 2019, together with video surveillance showing an individual entering the Ten Broeck Street location within the same time frame, was legally sufficient circumstantial evidence from which the jury could permissibly infer that defendant sold the customer crack cocaine (see People v Morton, 198 AD3d 1176, 1178 [3d Dept 2021], lv denied 37 NY3d 1163 [2022]; People v Scott, 174 AD3d 1049, 1051 [3d Dept 2019]). Although defendant challenged the People's theory that he was the individual entering the Ten Broeck Street location, we must view the evidence in the light most favorable [*4]to the People and defer to the jury's decision to credit the People's version of events. As to the weight of the evidence, while a different verdict would not have been unreasonable given the lack of direct evidence of defendant's guilt, given the extensive circumstantial evidence including testimony explaining the drug-related meaning of defendant's conversations and the surveillance footage showing defendant entering a known location for drug activity, we find that the verdict is not against the weight of the evidence (see People v Adams, 201 AD3d 1031, 1034-1035 [3d Dept 2022], lv denied 38 NY3d 948 [2022]; People v Cochran, 140 AD3d 1198, 1199-1200 [3d Dept 2016], lv denied 28 NY3d 970 [2016]).
As for the denial of defendant's request to be adjudicated a youthful offender, whether to grant youthful offender status is a matter "within the sound exercise of the sentencing court's discretion to determine if in the opinion of the court the interest of justice would be served by relieving the eligible youth from the onus of a criminal record" (People v Terry, 238 AD3d 1387, 1388-1389 [3d Dept 2025] [internal quotation marks and citations omitted], lv denied 44 NY3d 984 [2025]; see People v Hall, 243 AD3d 1070, 1073-1074 [3d Dept 2025], lv denied ___ NY3d ___ [Mar. 5, 2026]). The factors to be considered include "the gravity of the crime and manner in which it was committed, mitigating circumstances, defendant's prior criminal record, prior acts of violence, recommendations in the presentence reports, defendant's reputation, the level of cooperation with authorities, defendant's attitude toward society and respect for the law, and the prospects for rehabilitation and hope for a future constructive life" (People v Terry, 238 AD3d at 1389 [internal quotation marks and citations omitted]; see People v Hall, 243 AD3d at 1073).
Supreme Court weighed the relevant factors and providently exercised its discretion in declining to grant defendant youthful offender status. The record reflects that Supreme Court reviewed the presentencing report, which set forth, among other things, defendant's lack of remorse, refusal to take responsibility for his crimes, and a criminal history that included the arrest giving rise to his concurrent sentence on the unrelated weapons charge and multiple other arrests in another state. The People also asked Supreme Court to consider that, during pretrial proceedings in this matter, defendant fled the state and repeatedly failed to appear on scheduled court dates, resulting in the issuance of two bench warrants for his arrest and an 18-month delay of the trial during the period of defendant's abscondment. Defendant offered no mitigating circumstances for Supreme Court's consideration other than his stated desire to return home to his children and his promise to never commit a crime again. Under these circumstances, the court did not abuse its discretion in finding that defendant's criminal history and refusal to admit culpability [*5]warranted the denial of youthful offender status (see People v Dorfeuille, 127 AD3d 1414, 1415 [3d Dept 2015], lv denied 26 NY3d 928 [2015]; People v Francis, 83 AD3d 1119, 1123 [3d Dept 2011], lv denied 17 NY3d 806 [2011]).
Finally, we reject defendant's contention that the sentence imposed for his conviction of criminal sale of a controlled substance in the third degree was unduly harsh or severe. The sentence imposed, which was less than the statutory maximum sentence requested by the People, was specifically requested by defendant's counsel as an alternative in the event that youthful offender status was denied (see Penal Law §§ 70.70 [2] [a] [i]; 220.39). In view of defendant's criminal history and failure to accept responsibility for his actions, and considering that the challenged sentence runs concurrently to the sentence imposed on defendant's guilty plea to the unrelated charge, we perceive no reason to modify the sentence imposed (see People v Henley, 232 AD3d 1117, 1123-1124 [3d Dept 2024], lv denied 43 NY3d 930 [2025]; People v Cotto,231 AD3d at 1362). Defendant's remaining contentions, to the extent not addressed herein, have been considered and found to be without merit.
Garry, P.J., Reynolds Fitzgerald, Powers and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.