[961 NYS2d 447]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY MARSHALL, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCIS MORRISSEY, Appellant.

First Department, March 26, 2013

---

**APPEARANCES OF COUNSEL**

*Cuti Heckler LLP*, New York City (*John R. Cuti* and *Eric Hecker* of counsel), and *Warner Partners, PC*, New York City (*Kenneth E. Warner* and *Rhett O. Millsaps, II*, of counsel), for Anthony Marshall, appellant.

*Law Offices of Thomas P. Puccio*, New York City (*Thomas P. Puccio* of counsel), and *Davis & Gilbert LLP*, New York City (*Paul F. Corcoran* and *Dominick R. Cromartie* of counsel), and *Schulte Roth & Zabel LLP*, New York City (*William D. Zabel, Gary Stein* and *Frank J. LaSalle* of counsel), for Francis Morrissey, appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Gina Mignola* and *Amyjane Rettew* of counsel), for respondent.

**OPINION OF THE COURT**

CLARK, J.

The issues on this appeal are whether: (1) the verdicts on each count are supported by legally sufficient evidence and are in accord with the weight of the evidence; (2) the evidentiary rulings, prosecutorial conduct, and jury instructions were proper; (3) the court's response to a juror's note during deliberations was proper; and (4) the grand larceny count against defendant Anthony Marshall, which carries a mandatory prison sentence, should be dismissed in the interest of justice. For the reasons discussed below, we find that defendant Marshall's conviction for grand larceny in the second degree under the eighth count of the indictment is against the weight of the evidence. We have considered the remainder of defendants' arguments and find them unavailing.

Defendant Anthony Marshall's mother, Mrs. Brooke Astor, inherited millions of dollars in cash and real estate upon the death of her husband, Vincent Astor, in 1959. During her life, Mrs. Astor received income from the Vincent Astor Trust, and she had a general power to appoint the corpus of the trust in whatever way she desired. Vincent Astor left the remainder of his fortune to the Vincent Astor Foundation, a philanthropic organization run by Mrs. Astor, who remained actively involved in the Foundation until 1997.

In 1978, Mrs. Astor hired her son to run the Astor office. Defendant Marshall's responsibilities included managing his mother's finances and affairs. He held this job continuously through June 2006.

Marshall was the primary beneficiary of Mrs. Astor's various wills. From 1960 through 1990, with minor exceptions, Mrs. Astor's will bequeathed to Marshall all her real property, and either left her residuary estate to him outright or, between 1970 and 1990, to a trust which he had liberal rights to invade or request invasion of to obtain the principal during his life with broad power of appointment upon her death. Mrs. Astor's will also appointed Marshall trustee and co-executor.

Although Mrs. Astor made certain changes to her estate plan in the early 1990s, Marshall retained his status as the primary beneficiary of her estate and continued to use Mrs. Astor's funds. In 1997, Mrs. Astor changed her will, leaving half of the residuary estate to Marshall in a charitable remainder unitrust (CRUT), but she did not make any additional changes related to Marshall or his appointments as trustee and co-executor.

In late 2000, Mrs. Astor was diagnosed with "mild" stage Alzheimer's disease. On February 2, 2001, Mrs. Astor appointed Marshall as her health care proxy. On the same day, she executed a new will undoing the change to the residuary estate made in 1997. Once again, Marshall was to receive 100% of the residuary in trust, with the right to receive 5% of the value of that trust each year during his life, and the power to appoint the remaining principal to the charities of his choice.

On April 16, 2001, Mrs. Astor was diagnosed with dementia of moderate severity. Marshall asked her physician, Dr. Norman Relkin, if his mother remained competent to make a will. Dr. Relkin replied that although she had diminished capacity, this did not mean that she could not make decisions. He further stated that he could not project about what the future held for Mrs. Astor or attest to her legal competency.

On November 7, 2001, Mrs. Astor executed a codicil to her February 2001 will that increased Marshall's stake in the CRUT from 5% to 7% per year, and relieved him of his obligations to pay taxes on a $5 million bequest she had made to him earlier in the year.

Mrs. Astor's dementia progressed, and for the period from September 2003 through March 2004, there were approximately 68 instances of confusion and 46 instances of paranoia.

In 2003, Marshall began pressuring his mother's longtime attorney to help him obtain a greater share of her assets, more power to distribute her money to the charities of his choice, and a larger share of assets for his wife, if he should predecease his mother.

On December 18, 2003, Mrs. Astor's attorney supervised the execution of a codicil to her 2002 will, which gave Marshall the right to appoint 49% of the assets of the Vincent Astor Trust to charity (first codicil).

Subsequently, Mrs. Astor's longtime attorney was discharged. Defendant Francis Morrissey, an attorney hired by Marshall who helped orchestrate the termination of Mrs. Astor's longtime counsel, contacted attorney Warren Whitaker, who was then hired by Marshall using Mrs. Astor's power of attorney. At defendant's behest, Mr. Whitaker drafted a "Second Codicil," which eliminated the CRUT and the requirement that any amount go to charity, giving Marshall the residuary estate outright. On January 12, 2004, Mrs. Astor signed the second codicil after a 20-minute meeting with Mr. Whitaker, who she had not previously met.

On March 4, 2004, Morrissey presented a "Third Codicil" with Mrs. Astor's signature, which further diverted millions of dollars from Mrs. Astor's favorite charities into the hands of defendants by, among other things, increasing the legal fees and compensation Morrissey would receive. This reduced the amount of money that was supposed to be given to the charities by approximately $5.75 million. Two members of Mrs. Astor's household staff signed the document attesting to her competency.

In 2006, Marshall's son Philip initiated a guardianship proceeding to protect Mrs. Astor's person and property. During those proceedings, Marshall filed an answer and cross petition that allegedly included false information about money he had received from his mother.

In November 2007, the grand jury handed down an indictment charging both defendants with a scheme to defraud and related counts of conspiracy to commit larceny and false filing. In addition, Marshall was charged with multiple counts of grand larceny, possession of stolen property, and falsifying business records and Morrissey was charged with forgery and possession of a forged instrument.

At trial, the People sought to show that defendants engaged in a scheme to steal money from Mrs. Astor's estate. According to the People, defendants engaged in a scheme to enrich themselves by fraudulently changing Mrs. Astor's will. The People presented evidence that Morrissey and Marshall helped draft and execute the first and second codicils knowing that Mrs. Astor was not capable of understanding or consenting to them. They further maintained that Morrissey forged Mrs. Astor's signature to the third codicil.

Moreover, the People submitted evidence that in 2005, Marshall abused his position of trust under his mother's power of attorney to purloin more than $2 million by granting himself a retroactive pay raise and using his mother's money to buy a 55-foot yacht, as well as to pay the yacht captain's wages, the expenses related to his wife's property in Maine, and the salary of his mother's social secretary who was really working for his theatrical company. They also sought to show that Marshall stole two valuable works of art from Mrs. Astor's home.

During jury deliberations, one juror sent a note stating: "Due to heated argument, a juror feels personally threatened." The court instructed the jurors to conduct their discussions with civility and mutual respect for one another. After two more days

of deliberations, the jury acquitted Marshall of two counts, but otherwise found defendants guilty as charged.

Prior to sentencing, Marshall filed a *Clayton* motion, seeking to dismiss the count of grand larceny in the first degree. The court denied the motion, and sentenced defendants to an aggregate term of 1 to 3 years in prison.

In February 2010, defendants filed motions to vacate, claiming juror misconduct and asserting that the juror who sent the note had been coerced. On July 29, 2010, the court denied the motion, and this Court subsequently denied defendants' motion for permission to appeal from that decision. Defendants' appeal from the judgment of conviction followed.

In examining the record for legal sufficiency, we must view the evidence in a light most favorable to the People to determine whether "there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 349 [2007] [internal quotation marks omitted]).

Weight of the evidence review requires this Court to determine whether an acquittal would not have been unreasonable, and if so, to weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions (*see Danielson*, 9 NY3d at 349). A verdict is against the weight of the evidence if it appears that the trier of fact failed to give the evidence the weight it should be accorded (*see People v Bleakley*, 69 NY2d 490, 495 [1987]).

The verdicts as to both defendants were based on legally sufficient evidence and are not against the weight of the evidence (*see Danielson*, 9 NY3d at 349), except as indicated. The record amply supports the jury's determination that defendants are guilty of a scheme to defraud Mrs. Astor by fraudulently changing her will via the codicils at a time when they knew her physical and mental condition precluded her from having the capacity to agree to any such changes. The record, including the testimony of the People's expert handwriting analyst, also amply supports the jury's determination that Morrissey forged Mrs. Astor's signature on the third codicil to her will. Furthermore, except as indicated, the record amply supports the jury's determination that Marshall committed a series of larcenous acts.

The jury was confronted with factual issues concerning such matters as Mrs. Astor's actual and apparent mental condition at

the relevant times, defendants' criminal intent, and whether the final codicil was a forgery. We find no basis for disturbing the jury's credibility determinations, weighing of conflicting expert testimony, and choices between competing inferences.

Defendant Marshall argues that, due to the law in effect at the time, the durable power of attorney executed by Mrs. Astor allowed him to make unlimited gifts to himself, without regard to whether they were in the principal's best interest (*see Matter of Salvation Army v Ferrara*, 3 Misc 3d 944, 945-946 [Sur Ct, Rockland County 2004], *affd* 22 AD3d 578 [2d Dept 2005]). However, *Ferrara,* the case upon which Marshall relies, was subsequently reversed by the Court of Appeals (7 NY3d 244 [2006]).

■ In addition, the count charging grand larceny in the first degree does not allege that Marshall abused the power to make gifts to himself. Instead, it alleges that after Mrs. Astor's health deteriorated, Marshall improperly authorized a significant increase in the compensation he received for managing her finances. It further alleges that the increase was disproportionate to the salary his mother had authorized prior to the decline of her physical and mental health. In defending against this charge, Marshall does not rely on the gift-giving power. Rather, he points to the directive in the power of attorney that authorized him to conduct the "business operating transactions" on Mrs. Astor's behalf. *Ferrara*'s holding does not apply to that directive. Thus, the People only had to establish that the raise was not in good faith and was against the principal's interests. We see no reason to upset the jury's conclusion that Marshall abused his power in this regard.

■ Upon exercising our independent factual review power (CPL 470.15), we find that the verdict convicting Marshall of grand larceny under the eighth count of the indictment is against the weight of the evidence (*see Danielson*, 9 NY3d at 348-349). The evidence does not warrant a finding that Marshall committed grand larceny by having a social secretary employed by Mrs. Astor perform tasks for a production company that he was operating from his mother's apartment, especially in light of evidence that Mrs. Astor supported Marshall's theater ventures. Additionally, there was no evidence to suggest that the secretary's work for Marshall caused her to forgo work she was supposed to do for Mrs. Astor.

■ When the court received a note from the deliberating jury stating that a juror wished to be dismissed, the court properly

exercised its discretion in denying defendants' applications for a mistrial. While the note indicated that a juror felt "personally threatened" by a "heated argument," it did not indicate that there were actual threats of physical violence. Therefore, the note did not provide any indication that a juror was grossly unqualified or engaged in substantial misconduct (*see* CPL 270.35). Although the more prudent course of action would involve an inquiry of the jurors, the court acted well within its discretion by denying defendants' application for individual inquiries of the jurors and "in determining that supplemental instructions, as well as a break from deliberations, would be sufficient" (*People v Haxhia*, 81 AD3d 414 [1st Dept 2011], *lv denied* 17 NY3d 796 [2011], *cert denied* 565 US —, 132 S Ct 1539 [2012]; *see People v Gathers*, 10 AD3d 537 [1st Dept 2004], *lv denied* 3 NY3d 740 [2004]; *People v Cabrera*, 305 AD2d 263 [1st Dept 2003], *lv denied* 100 NY2d 560 [2003]; *cf. People v Lavender*, 117 AD2d 253 [1st Dept 1986], *appeal dismissed* 68 NY2d 995 [1986]). The court was in the best position to consider the jurors' demeanor at the time it delivered its supplemental charge. Following the court's thorough admonitions to the jury, the problems appeared to resolve themselves, and there is no reason to believe that the ultimate unanimous verdict, confirmed by polling, was the result of coercion.

Furthermore, the parties stipulated to expand the record on appeal to include the record of defendants' post-conviction CPL 440.10 motion relating to the events that occurred during jury deliberations and the expanded record provides no support for defendants' position. On the contrary, it unequivocally establishes that while a juror addressed angry remarks to another juror, there were no actual threats of violence. Accordingly, defendant could not have been prejudiced by the absence of an inquiry, since an inquiry would most likely have revealed the same facts developed in the parties' submissions on the CPL 440.10 motion.

The evidentiary rulings challenged by defendants on appeal were proper exercises of the trial court's discretion. The alleged instances of prosecutorial misconduct, viewed individually or collectively, did not deprive defendants of a fair trial. The court's curative actions were sufficient to prevent defendants from being prejudiced by any improprieties. We have considered and rejected defendants' remaining arguments for a new trial.

 After the verdict, Marshall moved to dismiss, in the interest of justice, the first-degree grand larceny count, which

requires a mandatory prison term. The court held that Marshall had not established any "compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution [on this count] would constitute or result in [an] injustice." This determination was well within the court's discretion (CPL 210.40 [1]; *see generally People v Clayton*, 41 AD2d 204 [2d Dept 1973]). On appeal, Marshall similarly contends that this Court should dismiss the first-degree grand larceny count in the interest of justice. We do not agree.

 In order to exercise our interest of justice jurisdiction, there must exist "special circumstances deserving of recognition" (*People v Chambers*, 123 AD2d 270, 270 [1st Dept 1986]). Ordinarily, this Court will not exercise its interest of justice jurisdiction absent "extraordinary circumstances" (*see e.g. People v Fair*, 33 AD3d 558, 558 [1st Dept 2006], *lv denied* 8 NY3d 945 [2007]). Marshall argues that his age, health, military service, public service, lack of a prior criminal history, and the nonviolent nature of the criminal conduct itself are special circumstances, which merit consideration for dismissal in the interest of justice. We have considered these facts, and find that, under the circumstances, there is no compelling or extraordinary factor warranting the exercise of our interest of justice jurisdiction to dismiss the first-degree grand larceny count (*see* CPL 470.15 [6] [a]).

We are not convinced that as an aged felon Marshall should be categorically immune from incarceration and it is generally inappropriate to use the interest of justice as a device for granting dispensations from mandatory sentencing statutes (*see e.g. People v Velasquez*, 25 AD3d 501 [1st Dept 2006], *lv denied* 6 NY3d 854 [2006]). Further, Marshall's age, along with the medical conditions presented, do not establish, based on the record before us, that incarceration will likely cause his death (*see People v Browarnik*, 42 AD2d 953 [1st Dept 1973]; *see also People v Notey*, 72 AD2d 279 [2d Dept 1980]). We also note that, if defendant becomes terminally ill, the legislature has provided a mechanism for release from prison on medical parole (*see* Executive Law § 259-r).

Moreover, even though defendant stands convicted of a first-time nonviolent felony offense, the lack of a criminal history is an ordinary circumstance that does not vitiate a prison term for obtaining millions of dollars through financial abuse of an elderly victim. Defendant's military and public service is laudable, but it does not rise to the level of an extraordinary or

special circumstance. His service may, in fact, be a substantial factor in the lenience shown by the trial court in pronouncing the mandatory minimum sentence of 1 to 3 years in prison. In addition, defendant's argument that substantial restitution paid to resolve the probate matters is a compelling factor, is unavailing.

Accordingly, the judgment of the Supreme Court, New York County (A. Kirke Bartley, J.), rendered December 21, 2009, convicting defendant Anthony Marshall, after a jury trial, of grand larceny in the first degree, grand larceny in the second degree (five counts), criminal possession of stolen property in the second degree (two counts), offering a false instrument for filing in the first degree (two counts), scheme to defraud in the first degree, conspiracy in the fourth degree (two counts), and conspiracy in the fifth degree, and sentencing him to an aggregate term of 1 to 3 years, should be modified, on the facts, to the extent of vacating the second-degree grand larceny conviction under the eighth count of the indictment and dismissing that count, and otherwise affirmed. The judgment of the same court and Justice, rendered December 21, 2009, convicting defendant Francis Morrissey of forgery in the second degree, scheme to defraud in the first degree, conspiracy in the fourth degree (two counts), and conspiracy in the fifth degree, and sentencing him to an aggregate term of 1 to 3 years, should be affirmed.

As to both defendants, the matter is remitted to Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (5).

MAZZARELLI, J.P., ANDRIAS, DEGRASSE and RICHTER, JJ., concur.

Judgment, Supreme Court, New York County, rendered December 21, 2009, convicting defendant Anthony Marshall, unanimously modified, on the facts, to the extent of vacating the second-degree grand larceny conviction under the eighth count of the indictment and dismissing that count, and otherwise affirmed. Judgment, same court, rendered December 21, 2009, convicting defendant Francis Morrissey, unanimously affirmed. As to both defendants, the matter is remitted to Supreme Court, New York County, for further proceedings pursuant to CPL 460.50 (5).