People v Chambers (2020 NY Slip Op 03822)





People v Chambers


2020 NY Slip Op 03822


Decided on July 9, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 9, 2020

109011

[*1]The People of the State of New York, Respondent,
v
Gary Chambers, Also Known as G, Appellant.

Calendar Date: May 18, 2020

Before: Garry, P.J., Clark, Aarons, Pritzker and Colangelo, JJ.


Henry C. Meier III, Delmar, for appellant.
Letitia James, Attorney General, New York City (James F. Gibbons of counsel), for respondent.



Clark, J.
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered May 5, 2016, upon a verdict convicting defendant of the crimes of conspiracy in the second degree, criminal sale of a controlled substance in the first degree (two counts), criminal sale of a controlled substance in the second degree (two counts) and criminal possession of a controlled substance in the third degree.
In June 2014, following a series of controlled buys targeting Gerard Carter, a suspected drug dealer, the Attorney General's Statewide Organized Crime Task Force began a monthslong investigation into an illegal drug distribution scheme in the Capital Region. As part of that investigation, the task force sought and obtained an eavesdropping warrant to intercept telephone and text message communications occurring over a cell phone used by Carter, as well as an order authorizing the installation of a pen register on Carter's phone and the collection of real time cell-site location information. As the investigation progressed, the task force sought and obtained amended and extended eavesdropping warrants and pen register and cell-site location information orders authorizing the electronic surveillance of various individuals who, through intercepted communications and undercover surveillance, were implicated as participants in the drug distribution ring. Specifically, during the course of the investigation, the task force collected evidence indicating, as relevant here, that codefendants Bu'Quan Galloway and Latasha Gause sold cocaine in the Albany County area and that defendant was one of their suppliers.
In November 2014, undercover officers surveilled defendant during a suspected meet in Queens County between defendant and Derrick Brown, defendant's supplier, after which defendant was followed onto the highway, observed to have committed a traffic violation and stopped by a uniformed state trooper. Defendant ultimately consented to a canine search of his vehicle and the canine alerted to the scent of narcotics outside and then inside of the vehicle; however, neither a hand search of the vehicle nor a subsequent search at the State Police barracks revealed any contraband, although the glovebox was observed to have been modified. Defendant and his vehicle were released from police custody shortly thereafter.
In December 2014, defendant's cousin — codefendant Marklen Hay — was arrested inside a restaurant in the City of Albany with roughly 150 grams of crack cocaine in his possession, while Gause was arrested outside of the restaurant with roughly $6,000 in cash in a plastic bag. Thereafter, in March 2015, defendant and 13 others — including Galloway, Gause and Hay — were charged in a 75-count indictment with various crimes related to their alleged involvement in the illegal drug distribution scheme.[FN1] Defendant was indicted on eight charges: conspiracy in the second degree, criminal sale of a controlled substance in the first degree (two counts), criminal sale of a controlled substance in the second degree (three counts) and criminal possession of a controlled substance in the third degree (two counts). Defendant unsuccessfully moved to suppress all communications intercepted as a result of the eavesdropping warrants, as well as any statements he made during the traffic stop.[FN2] The matter thereafter proceeded to a jury trial, at the conclusion of which defendant was acquitted of one count of criminal sale of a controlled substance in the second degree and one count of criminal possession of a controlled substance in the third degree, but otherwise convicted as charged. Defendant was sentenced to concurrent prison terms of 3&frac13; to 10 years for the conviction of conspiracy in the second degree, 15 years with five years of postrelease supervision for each conviction of criminal sale of a controlled substance in the first and second degrees, and nine years with two years of postrelease supervision for the conviction of criminal possession of a controlled substance in the third degree. Defendant appeals.
Defendant asserts that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence. Specifically, defendant argues that the People failed to prove that he affirmatively agreed to participate in the crimes underlying his conspiracy conviction or the "threshold weights" of the controlled substances he was convicted of selling. Defendant, however, did not raise these particular arguments in his motion for a trial order of dismissal and, thus, his legal sufficiency challenges are unpreserved (see People v Gray, 86 NY2d 10, 20-21 [1995]; People v Rose, 79 AD3d 1365, 1366 [2010]; People v Gonzalez, 64 AD3d 1038, 1039 [2009], lv denied 13 NY3d 796 [2009]). Nevertheless, as part of our weight of the evidence review, we necessarily assess whether each element of the crimes for which defendant was convicted was proven beyond a reasonable doubt (see People v Miller, 160 AD3d 1040, 1041 [2018], lv denied 32 NY3d 939 [2018]; People v Wright, 139 AD3d 1094, 1096 [2016], lvs denied 28 NY3d 939 [2016], 29 NY3d 1089 [2017]).
To support a conviction for conspiracy in the second degree, the People had to prove that defendant, acting with intent that conduct constituting a class A felony be performed, agreed with one or more persons to engage in or cause the performance of such conduct and that one of the coconspirators committed an overt act in furtherance of the conspiracy (see Penal Law §§ 105.20, 105.15). As for criminal sale of a controlled substance in the first degree, a class A-I felony, the People had to prove that defendant knowingly and unlawfully sold "one or more preparations, compounds, mixtures or substances containing a narcotic drug . . . of an aggregate weight of two ounces or more" (Penal Law § 220.43 [1]). Similarly, for a conviction of criminal sale of a controlled substance in the second degree, a class A-II felony, the People had to prove that defendant knowingly and unlawfully sold "one or more preparations, compounds, mixtures or substances containing a narcotic drug . . . of an aggregate weight of one-half ounce or more" (Penal Law § 220.41 [1]). Finally, for a conviction of criminal possession of a controlled substance in the third degree, the People had to prove that defendant knowingly and unlawfully possessed a narcotic drug with intent to sell (see Penal Law § 220.16 [1]).
Together, the trial testimony and the intercepted cell phone calls and text messages established that, during the course of the task force investigation, defendant purchased powder cocaine from Brown, processed it into crack cocaine and sold crack cocaine to Gause on four separate occasions. As corroborated by her intercepted calls and text messages with defendant, Gause testified that she typically ordered cocaine from defendant by informing him of the total price she wanted to pay, from which defendant would then extrapolate the amount of cocaine desired based upon a previously agreed-upon price per gram. Gause testified as to each of the four sale transactions for which defendant was convicted, each time explaining the coded language used in her communications with defendant to detail the amount of cocaine sought. Gause's testimony, along with the corresponding intercepted communications, demonstrated that she purchased $2,650 worth of cocaine on August 25, 2014, $3,850 worth of cocaine on August 29, 2014, $3,600 worth of cocaine on August 31, 2014 and 100 grams of cocaine — which she referred to as a "buck" in an intercepted text message to defendant — on September 22, 2014.
Although Gause could not recall the exact amount paid per gram in each transaction, she testified that she would pay defendant $47 or $48 per gram. Testimony from Hay and Brown, as well as law enforcement agents with knowledge of drug trafficking in the Albany County area, corroborated Gause's explanations of the coded language used in the intercepted communications and established that the going rate for a gram of cocaine in Albany County was no more than $50 per gram. Contrary to defendant's assertions, the jury could have reasonably concluded from the foregoing evidence that defendant sold two or more ounces of cocaine to Gause on August 29, 2014 and August 31, 2014 and a half ounce or more on August 25, 2014 and September 22, 2014, so as to support his convictions for criminal sale of a controlled substance in the first and second degrees (see Penal Law §§ 220.43 [1]; 220.41 [1]). In addition, such evidence was sufficient to establish that defendant agreed with at least one other person to engage in conduct constituting criminal sale of a controlled substance in the first and second degrees and that one or more of the coconspirators committed an overt act in furtherance of the conspiracy (see Penal Law §§ 105.20, 105.15).
As for defendant's conviction for criminal possession of a controlled substance in the third degree, testimony from Brown, together with intercepted communications, established that, on a particular date in September 2014, defendant knowingly and unlawfully possessed cocaine with an intent to sell (see Penal Law § 220.16 [1]). Specifically, the evidence demonstrated that defendant contacted Brown seeking to add an additional 150 grams of cocaine to his usual order of 250 grams of cocaine. Brown testified that he could only secure a portion of the additional order request and that he thereafter met defendant and sold him 312 grams of cocaine. As with Gause's testimony, Brown's explanations of the coded language used in his communications with defendant were corroborated by testimony from law enforcement agents with knowledge of and experience investigating drug trafficking, as well as other accomplice testimonies.
Defendant testified on his own behalf and corroborated many aspects of the accomplice testimony provided by Brown, Gause and Hay. Defendant confirmed that Brown was his supplier, that he was Gause's supplier and that he engaged in several purchase/sale transactions with Brown and Gause during the course of the task force's investigation. However, defendant steadfastly maintained that he dealt in marihuana, not cocaine, and that the coded language used in his intercepted communications with Brown and Gause referred entirely to the purchase and sale of marihuana. Considering defendant's testimony, the fact that no real evidence was recovered in connection with the sale and possession charges and the credibility issues raised with respect to the accomplice testimony, it would not have been unreasonable for the jury to have reached a different verdict (see People v Turner, 178 AD3d 70, 74 [2019]). However, when we view the evidence in a neutral light and defer to the jury's resolution of the credibility issues, we find that the verdict is amply supported by the weight of the evidence (see People v Turner, 178 AD3d at 74; People v Vargas, 72 AD3d 1114, 1117-1119 [2010], lv denied 15 NY3d 758 [2010]).
The remaining arguments raised by defendant are largely unpreserved and, therefore, do not require extended discussion. Specifically, defendant asserts that the People should have been precluded from introducing testimony relating to the circumstances of the traffic stop and the subsequent search of his vehicle at the State Police barracks because both the stop and the search were illegal.[FN3] This argument, raised for the first time on appeal, is unpreserved and, in any event, wholly lacking in merit (see People v Elder, 173 AD3d 1344, 1345 [2019], lv denied 34 NY3d 930 [2019]; People v Brown, 169 AD3d 1258, 1259 [2019], lv denied 33 NY3d 1029 [2019]). Defendant similarly failed to preserve his argument that the audio recordings of his intercepted cell phone communications should have been suppressed because the initial pen register and cell-site location information order relating to Carter contained a typographical error (see People v Johnson, 172 AD3d 1628, 1633 [2019], lv denied 34 NY3d 951 [2019]). Defendant further argues that the People should have been precluded from introducing evidence of cell-site location information from his cell phone because the orders by which such evidence was obtained were not supported by probable cause, as is required (see Carpenter v United States, ___ US ___, 138 S Ct 2206, 2221 [2018]). Defendant, however, did not move in County Court to preclude the cell-site location information, and, thus, the issue is unpreserved for our review (see People v Clark, 171 AD3d 942, 943 [2019], lv denied 33 NY3d 1067 [2019]; People v Weaver, 167 AD3d 1238, 1240 [2018], lv denied 33 NY3d 955 [2019]).[FN4] In any event, even if preserved, we would find that the probable cause requirement would have been satisfied here (see generally People v Sorrentino, 93 AD3d 450, 451 [2012], lv denied 19 NY3d 977 [2012]).
Lastly, as the People concede, the sentences imposed upon defendant for each of his convictions of criminal sale of a controlled substance in the second degree — specifically, a sentence of 15 years in prison, followed by five years of postrelease supervision — exceed the statutorily permissible range and, consequently, are illegal (see Penal Law § 70.71 [2] [b] [ii]). As such, the illegal sentences must be vacated, and the matter remitted for resentencing on those counts (counts 26 and 57 of the indictment). Defendant's remaining challenges to his sentence have been rendered academic by our determination (see e.g. People v Guay, 72 AD3d 1201, 1205 [2010], affd 18 NY3d 16 [2011]; People v Molano, 70 AD3d 1172, 1177 [2010], lv denied 15 NY3d 776 [2010]).
To the extent that we have not expressly addressed any of defendant's contentions, we have reviewed them and find them unpersuasive.
Garry, P.J., Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment is modified, on the law, by vacating the sentences imposed on counts 26 and 57 of the indictment; matter remitted to the County Court of Albany County for resentencing on those counts; and, as so modified, affirmed.



Footnotes

Footnote 1: Carter was charged in a separate indictment and ultimately pleaded guilty to the crime of criminal sale of a controlled substance in the third degree. Carter appealed the judgment of conviction, and this Court affirmed (People v Carter, 166 AD3d 1212, 1213 [2018]).

Footnote 2: With respect to the traffic stop, the only statement that the People sought to introduce at trial was defendant's identification of himself.

Footnote 3: To the extent that defendant's brief can be read to raise issues regarding a body search that allegedly took place at the State Police barracks, such argument is unpreserved (see CPL 470.05 [2]; People v Bullock, 97 AD3d 600, 600 [2012], lv denied 19 NY3d 1101 [2012]).

Footnote 4: Although the Supreme Court of the United States had yet to hold that probable cause is required for the acquisition of cell-site location information from an individual's cell phone (see Carpenter v United States, 138 S Ct at 2221), defendant nevertheless could have challenged the basis for County Court's orders authorizing the delivery of real-time cell-site location information from defendant's cell phone under the standard applicable at that time (see 18 USC § 2703 [d]).