People v Minwalkulet (2021 NY Slip Op 05195)





People v Minwalkulet


2021 NY Slip Op 05195


Decided on October 1, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 1, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, LINDLEY, TROUTMAN, AND WINSLOW, JJ.


667 KA 18-01895

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
TEWODROS MINWALKULET, ALSO KNOWN AS TEWODROS BEYENE, DEFENDANT-APPELLANT. 






EASTON THOMPSON KASPEREK SHIFFRIN LLP, ROCHESTER (BRIAN SHIFFRIN OF COUNSEL), FOR DEFENDANT-APPELLANT.
JAMES B. RITTS, DISTRICT ATTORNEY, CANANDAIGUA (V. CHRISTOPHER EAGGLESTON OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Ontario County Court (Frederick G. Reed, A.J.), rendered June 19, 2018. The judgment convicted defendant upon a jury verdict of criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fourth degree, criminal sale of a controlled substance in the fifth degree, criminal sale of marihuana in the third degree and endangering the welfare of a child. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]) and endangering the welfare of a child (§ 260.10 [1]). We affirm.
In early 2002, defendant sold drugs, including cocaine, ecstasy, and methamphetamine, to an undercover officer of the New York State Police Department (State Police). After several such transactions had taken place, the undercover officer contacted defendant and arranged to meet him in a parking lot in Ontario County for the purpose of buying two "eight balls" of cocaine. When defendant arrived at that location, officers removed him from the front seat of his car and placed him under arrest. The arresting officer recovered cocaine from defendant's coat pocket and observed defendant's young child in the back seat of the car. Defendant was subsequently indicted and arraigned in Ontario County. On June 8, 2002, he was released on his own recognizance, and absconded. State Police investigators were unable to locate defendant despite searching for him for the next 14 years. On May 15, 2016, defendant was arrested in Pennsylvania. The next day, defendant's whereabouts in Pennsylvania became known to the Monroe County Sheriff's Department. The authorities in that county commenced proceedings to extradite defendant to face charges unrelated to those at issue here; defendant waived extradition. The State Police learned of defendant's whereabouts over six months later after performing a search of a national law enforcement database. On November 22, 2016, the State Police informed the Ontario County District Attorney's office of defendant's location in Pennsylvania, and defendant was returned to Ontario County on March 20, 2017.
Contrary to defendant's contention, County Court properly denied his motion to dismiss the indictment on statutory speedy trial grounds. The People do not dispute that defendant met his initial burden "of alleging that the People were not ready for trial within the statutorily prescribed time period" (People v Allard, 28 NY3d 41, 45 [2016]; see CPL 30.30 [1] [a]; People v Anderson, 188 AD3d 1699, 1699 [4th Dept 2020], lv denied 36 NY3d 1055 [2021]), thereby shifting the burden to the People to demonstrate "sufficient excludable time" (People v Kendzia, 64 NY2d 331, 338 [1985]; see Anderson, 188 AD3d at 1699). Because defendant was charged with a felony, the People were permitted no more than six months of delay (see CPL 30.30 [1] [a]).
With respect to the period of time from defendant's March 22, 2002 arrest until his June 8, 2002 release, the People correctly concede that 54 days are chargeable to them, and defendant has abandoned any contention that any additional days are chargeable to the People.
The People contend that the period from June 8, 2002, until November 22, 2016, is excludable because defendant's location was unknown to them and he was attempting to avoid apprehension or prosecution (see CPL 30.30 [4] [c] [i]). It is well established that "[t]he People need not exercise due diligence in attempting to locate a defendant who is attempting to avoid apprehension or prosecution" (People v Torres, 88 NY2d 928, 931 [1996]). Moreover, knowledge of a defendant's location may not be imputed from one governmental entity to another; a defendant's location is unknown unless it is "actually" known to the People (People v Sigismundi, 89 NY2d 587, 592 [1997]). The People, however, failed to preserve that contention for our review because they failed to raise it before County Court (see People v Williams, 137 AD3d 1709, 1710 [4th Dept 2016]), and therefore this Court has no power to review it (see CPL 470.15 [1]; People v Concepcion, 17 NY3d 192, 195 [2011]; People v LaFontaine, 92 NY2d 470, 474 [1998], rearg denied 93 NY2d 849 [1999]).
Because the question whether defendant was attempting to avoid apprehension or prosecution is not properly before us, "the issue [here] is whether law enforcement acted with due diligence in attempting to locate him" (Anderson, 188 AD3d at 1700; cf. Torres, 88 NY2d at 930-931). Contrary to defendant's contention, we conclude that the People established that the State Police acted with due diligence (see Anderson, 188 AD3d at 1700; People v Petrianni, 24 AD3d 1224, 1224-1225 [4th Dept 2005]). Specifically, the State Police investigators routinely checked law enforcement databases and social media, investigated addresses formerly associated with defendant, sought information about defendant's whereabouts from the FBI and the authorities in Canada, and interviewed defendant's wife and mother-in-law. In 2011, the investigation yielded photographic evidence that corroborated assertions that defendant had fled to his native Ethiopia. Nevertheless, the State Police continued to search for defendant. They repeatedly checked the same law enforcement databases and social media, contacted local police in Massachusetts and motor vehicle departments in Massachusetts and Florida after receiving information connecting defendant to those states, and put defendant's photograph in the newspaper, listing him as a person who was wanted by the police on felony charges. Eventually, a search of a law enforcement database yielded information that defendant had been jailed in Pennsylvania. Although it is true that the People would have learned of defendant's location more quickly if they had performed more frequent searches of the database, defendant had been on the run for 14 years, and " 'the police are not obliged to search for a defendant indefinitely as long as they exhaust all reasonable investigative leads as to his [or her] whereabouts' " (Petrianni, 24 AD3d at 1224). Under the circumstances, the actions of the State Police "constituted due diligence, notwithstanding the fact that greater efforts could have been undertaken" (People v Grey, 259 AD2d 246, 249 [3d Dept 1999], lv denied 94 NY2d 880 [2000]; see Anderson, 188 AD3d at 1700-1701).
Even if we assume, arguendo, that the four-month period from November 22, 2016, until March 20, 2017, is also chargeable to the People, defendant's speedy trial rights were not violated because that period, in addition to the 54 days conceded above, does not exceed six months (see CPL 30.30 [1] [a]).
Defendant further contends that the People violated his constitutional speedy trial rights. Initially, we note that defendant " 'moved to dismiss the indictment on statutory speedy trial grounds only and thus failed to preserve for our review his present contention that he was denied his constitutional right to a speedy trial' " (People v Schillawski, 124 AD3d 1372, 1373 [4th Dept 2015], lv denied 25 NY3d 1207 [2015]). In any event, his contention lacks merit. The factors we consider are "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" (People v Taranovich, 37 NY2d 442, 445 [1975]). Although the delay was extensive, most of it is directly attributable to defendant because he absconded from the jurisdiction, fleeing the state and possibly even to a different country, thereby preventing the People from locating him (see People v Lara, 165 AD3d 563, 563 [1st Dept 2018], lv denied 32 NY3d 1206 [2019]; see generally People v Williams, 78 AD3d 160, 166 [1st Dept 2010], lv denied 16 NY3d 838 [2011]). The extent of defendant's pretrial incarceration was relatively brief and he "enjoyed [*2]significant freedom" before he was arrested in Pennsylvania (People v Vernace, 96 NY2d 886, 888 [2001]). Further, defendant failed to demonstrate that he was prejudiced by the delay (see Lara, 165 AD3d at 564; People v Barnes, 41 AD3d 1309, 1310 [4th Dept 2007], lv denied 9 NY3d 920 [2007]). "Far from giving the People an unfair tactical advantage, the delay here has made the case against defendant," which was entirely dependent on police testimony, potentially "more difficult to prove beyond a reasonable doubt" (Vernace, 96 NY2d at 888).
Because a motion based on a violation of defendant's constitutional speedy trial rights had little or no chance of success, we reject defendant's contention that his counsel was constitutionally ineffective in failing to make such a motion (see People v Caban, 5 NY3d 143, 152 [2005]).
Defendant further contends that the verdict is against the weight of the evidence with respect to the conviction of endangering the welfare of a child. Viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict with respect to that count is not against the weight of the evidence (see People v Bleakley, 69 NY2d 490, 495 [1987]).
Finally, the sentence is not unduly harsh or severe.
Entered: October 1, 2021
Ann Dillon Flynn
Clerk of the Court