People v Adams (2022 NY Slip Op 00076)





People v Adams


2022 NY Slip Op 00076


Decided on January 6, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 6, 2022

111098
[*1]The People of the State of New York, Respondent,
v
Quinton Adams, Also Known as Q, Appellant.

Calendar Date:October 20, 2021

Before:Egan Jr., J.P., Lynch, Clark, Aarons and Reynolds Fitzgerald, JJ.

Kathryn Friedman, Buffalo, for appellant.
Letitia James, Attorney General, New York City (Jodi A. Danzig of counsel), for respondent.



Clark, J.
Appeal from a judgment of the County Court of Schenectady County (Sypniewski, J.), rendered February 11, 2019, upon a verdict convicting defendant of the crimes of conspiracy in the second degree, criminal sale of a controlled substance in the first degree and criminal sale of a controlled substance in the third degree.
Defendant, along with numerous other individuals, was charged in an 84-count indictment as a result of a cocaine trafficking investigation led by the Attorney General's Organized Crime Task Force. The complex investigation spanned many months in 2017 and included eavesdropping warrants. As relevant here, it is alleged that, while in the Bronx, defendant supplied cocaine to Jevon Henry, who was located in the City of Schenectady, Schenectady County, by means of Henry's girlfriend, Aisha Murray, who acted as a drug courier.[FN1] Henry then resold the drugs to others in Schenectady, including Raydell Robinson. While in Schenectady, Robinson sold cocaine to a confidential informant through several controlled sales. Initially, defendant was charged with one count of conspiracy in the second degree (count 1) (see Penal Law § 105.15), two counts of criminal sale of a controlled substance in the first degree (counts 43 and 78) (see Penal Law § 220.43 [1]), three counts of criminal possession of a controlled substance in the third degree (counts 64, 75 and 77) (see Penal Law § 220.16 [1]), one count of criminal sale of a controlled substance in the third degree (count 65) (see Penal Law § 220.39 [1]) and one count of operating as a major trafficker (see Penal Law § 220.77 [2]) (count 83). At the conclusion of a jury trial, defendant was acquitted of counts 77, 78 and 83 but convicted of counts 1, 43 and 65.[FN2] Following an unsuccessful motion to set aside the verdict on the ground of an alleged Brady violation, defendant was sentenced to concurrent prison terms of 12 years on his first degree criminal sale conviction, nine years on his third degree criminal sale conviction, and 6 to 18 years on his conspiracy conviction, along with certain postrelease supervision. Defendant appeals.
We agree with defendant that the count of conspiracy in the second degree (count 1) and the count of criminal sale of a controlled substance in the first degree (count 43) must be dismissed as said convictions are against the weight of the evidence. In a weight of the evidence review, we first determine whether, based on all of the credible evidence, a different finding would have been unreasonable, and, if not, we then "weigh the relative probative force of the conflicting testimony and the relative strength of the conflicting inferences that may be drawn from the testimony" to determine if the verdict is supported by the weight of the evidence (People v Tromans, 177 AD3d 1103, 1103-1104 [2019] [internal quotation marks, brackets and citations omitted]; see People v Rudge, 185 AD3d 1214, 1215 [2020], lv denied 35 NY3d 1070 [2020]). The criminal sale of [*2]a controlled substance in the first degree charge arose out of events on October 28, 2017 and the surrounding days.
At trial, the People relied on the testimony of several codefendants, who had pleaded guilty, and Matthew Guiry, an investigator with the State Police, along with a series of text messages and phone calls between defendant and Henry,[FN3] and Henry and others, which were obtained from eavesdropping warrants. None of the codefendants testified to defendant's involvement in any of their drug purchases, and no cocaine was recovered on or immediately after October 28, 2017. Robinson testified that he knew that Henry's supplier was in the Bronx and that he had previously met defendant but did not know him to be Henry's supplier. Police surveillance confirmed that Murray had traveled back and forth from Schenectady to the Bronx on numerous occasions. Although no police surveillance occurred on the day of the alleged drug transaction, a cell phone tower map confirmed Henry's location in the Bronx on October 29, 2017, when it is believed that Henry paid defendant for the cocaine that was purchased by Murray the day before. The People attempted to establish the price per gram of the cocaine that defendant was allegedly supplying to Henry by relying upon, among other things, a call between defendant and his supplier, Quentin Bellinger — a call that occurred weeks after October 28, 2017.[FN4] The jury was expected to extrapolate the number of grams sold on October 28, 2017 based upon Guiry's interpretation [FN5] of the coded calls and texts.
Although the jury may have been able to infer from the intercepted communications that defendant sold cocaine to Henry on October 28, 2017, the evidence failed to satisfy the two ounce or more weight element of criminal sale of a controlled substance in the first degree (see Penal Law § 220.43 [1]; People v Cochran, 140 AD3d 1198, 1199 [2016], lv denied 28 NY3d 970 [2016]; People v Wright, 139 AD3d 1094, 1096 [2016], lvs denied 28 NY3d 939 [2016], 29 NY3d 1089 [2017]). Under these circumstances, the evidence falls short of establishing the elements of criminal sale of a controlled substance in the first degree when viewed in a neutral light (see People v Whitehead, 130 AD3d 1142, 1144 [2015], affd 29 NY3d 956 [2017]; People v Martin, 81 AD3d 1178, 1179-1180 [2011], lv denied 17 NY3d 819 [2011]). As defendant's conspiracy conviction is premised upon the criminal sale in the first degree charge, it too must fall based upon a review of the weight of the evidence (see Penal Law § 105.15; People v Cochran, 140 AD3d at 1199; People v Wright, 139 AD3d at 1097).
We find that defendant's conviction on the remaining count, criminal sale of a controlled substance in third degree (count 65), which occurred on November 12, 2017, is legally sufficient and not against the weight of the evidence. When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine [*3]whether "there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 349 [2007] [internal quotation marks and citations omitted]; see People v Lendof-Gonzalez, 36 NY3d 87, 91-92 [2020]; People v Denson, 26 NY3d 179, 188 [2015]). As to the events of November 12, 2017, Guiry and another officer obtained video surveillance footage of defendant outside his residence in the Bronx meeting with Murray, which shows, among other things, defendant receiving a package from Murray, meeting with an unknown male, switching bags with that unknown male and then meeting with Murray a second time later that evening, exchanging another package. Guiry testified to his observations of the events, as well as his interpretation of intercepted phone and text communications between defendant and Henry, defendant and Bellinger, and Henry and others prior to and after the exchanges between defendant and Murray. Gregory Lischak, another investigator with the State Police, testified that he was part of the team that followed Murray from Schenectady to the Bronx on November 12, 2017 and that they kept her under surveillance the entire time to the Bronx and on her nonstop trip back to Schenectady. The evidence was legally sufficient, established the criminal sale of a controlled substance in the third degree and supported the People's theory that defendant sold cocaine to Murray on November 12, 2017 who then delivered the cocaine to Henry in Schenectady. As to the weight of the evidence, although a different verdict on this count would not have been unreasonable, there was more than ample independent evidence of guilt, in addition to the intercepted communications with respect to the November 12, 2017 transaction. Deferring to the jury's credibility determinations, the People proved beyond a reasonable doubt that defendant engaged in the sale of cocaine on November 12, 2017 (see Penal Law § 220.39 [1]; People v Cochran, 140 AD3d at 1199-1200; People v Wright, 139 AD3d at 1097-1098; cf. People v Chambers, 185 AD3d 1141, 1144-1145 [2020], lvs denied 36 NY3d 1055, 1056 [2021]; People v Williams, 138 AD3d 1233, 1234-1236 [2016], lvs denied 28 NY3d 932, 939 [2016]).
Defendant's remaining contentions merit little discussion. Venue was properly established in Schenectady County (see CPL 20.40 [1] [a]; 20.60 [1], [2]). The People proved venue by a preponderance of the evidence by establishing that defendant engaged in telecommunications between jurisdictions and agreed that cocaine would be transported to another jurisdiction (see CPL 20.60 [1], [2]), thus establishing venue under CPL 20.40 (1) (a) (see People v Carvajal, 14 AD3d 165, 171 [2004], affd 6 NY3d 305 [2005]; People v Taylor, 304 AD2d 434, 436 [2003], lv denied 100 NY2d 566 [2003]; People v Giordano, 211 AD2d 814, 815 [1995], affd 87 NY2d 441 [1995]).
We agree with County Court [*4]that no Brady violation occurred with respect to the People's failure to disclose that a witness, Hardley Pierre, was under investigation for drug crimes in Saratoga County at the time of trial. "Where, as here, nondisclosure follows the defense's specific request for materials, evidence is deemed material and reversal is required only if there is a reasonable possibility that, had that material been disclosed, the result would have been different" (People v Johnson, 107 AD3d 1161, 1166-1167 [2013] [internal quotation marks and citations omitted], lv denied 21 NY3d 1075 [2013]; see People v Vilardi, 76 NY2d 67, 73-77 [1990]). There is no reasonable probability that the disclosure of the subject impeachment evidence would have resulted in a different outcome.
Pierre testified that he was involved in the sale of cocaine and his sole supplier was Henry. Pierre also indicated that he got cocaine through Murray when Henry was not available. Pierre provided useful corroboration, by identifying the make and color of Henry's car and by identifying Murray as being involved in the transportation of cocaine, but his testimony was by no means the lynchpin of the case against defendant. County Court properly found that Pierre did not testify in exchange for any benefit in the Saratoga County investigation, and was not even aware of the investigation at the time he testified, and noted that defendant had the opportunity to cross-examine Pierre about notes from a debriefing of Pierre detailing drug sales continuing up until April 2018, which included the Saratoga County offenses (see People v Garrett, 23 NY3d 878, 891-892 [2014]; People v Wade, 166 AD3d 912, 912-913 [2018], lv denied 33 NY3d 1036 [2019]; People v Johnson, 107 AD3d at 1165-1166; People v Phillips, 55 AD3d 1145, 1149 [2008], lv denied 11 NY3d 899 [2008]; compare People v Lewis, 125 AD3d 1109, 1110-1111 [2015]). The evidence was not material, defendant suffered no prejudice and he therefore failed to establish a Brady violation.
Lastly, as to defendant's sentence, we find no extraordinary circumstances to reduce his sentence (see People v Jones, 196 AD3d 922, 922-923 [2021]; People v Marshall, 106 AD3d 1, 11 [2013], lvs denied 21 NY3d 1006, 1007 [2013]; People v Lemons, 6 AD3d 756, 756 [2004]; People v Dela Cruz, 282 AD2d 775, 776 [2001]; People v Cruz, 244 AD2d 803, 804-805 [1997]). Although defendant received the maximum sentence, nine years in prison with two years of postrelease supervision, on his criminal sale of a controlled substance in the third degree conviction, his extensive criminal history supports County Court's sentence (see People v Cochran, 140 AD3d at 1202; People v Burroughs, 64 AD3d 894, 898 [2009], lv denied 13 NY3d 794 [2009]).
Egan Jr., J.P., Lynch, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is modified, on the facts, by reversing defendant's convictions of conspiracy in the second degree and criminal sale of a controlled substance [*5]in the first degree under counts 1 and 43 of the indictment; said counts dismissed and the sentences imposed thereon vacated; and, as so modified, affirmed.



Footnotes

Footnote 1: At the time of trial, the jury was informed that an active arrest warrant existed for Henry based on his involvement in the subject trafficking and that Murray entered a guilty plea to conspiracy in the second degree and criminal possession of a controlled substance in the second degree. Murray did not testify at defendant's trial.

Footnote 2: Counts 64 and 75 were dismissed by County Court at the close of the People's proof as legally insufficient.

Footnote 3: On October 28, 2017, an individual that Guiry identified as Henry told defendant that the "balance on the card is um 12, she had left 22" and that, when he comes down tomorrow, he will give it to him. According to Guiry, this meant that Murray, who was on her way to the Bronx to meet defendant, left $22,000 in Schenectady and Henry would deliver it the next day.

Footnote 4: At the time of trial, Bellinger had an active arrest warrant for the charges pertaining to him in the indictment.

Footnote 5: Guiry testified that, on November 20, 2017, defendant called Bellinger; during this call defendant asked for the "best, on the wood, for three," which, to Guiry, meant three kilos of cocaine, to which Bellinger replied, "31," meaning $31,000 per kilo.