People v Stanley (2026 NY Slip Op 00941)

People v Stanley

2026 NY Slip Op 00941

Decided on February 19, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 19, 2026

CR-23-1457
[*1]The People of the State of New York, Respondent,
vTheresa Stanley, Appellant.

Calendar Date:January 12, 2026

Before:Garry, P.J., Clark, Pritzker, Powers and Corcoran, JJ.

Steven M. Sharp, Albany, for appellant.
Letitia James, Attorney General, New York City (Sheila L. Bautista of counsel), for respondent.

Corcoran, J.
Appeal from a judgment of the Supreme Court (Roger McDonough, J.), rendered January 27, 2023 in Albany County, upon a verdict convicting defendant of the crimes of conspiracy in the second degree, criminal possession of a controlled substance in the third degree (two counts) and endangering the welfare of a child (two counts).
During the summer of 2020, the Attorney General's Organized Crime Task Force and the Albany Police Department conducted a joint wiretap investigation into the cocaine distribution operation of Jamar Brayboy. Investigators intercepted numerous cellular telephone calls in which Brayboy, defendant and others discussed obtaining and supplying various quantities of cocaine, culminating in a sweeping indictment against several defendants. Defendant was charged by indictment with conspiracy in the second degree, three counts of criminal possession of a controlled substance in the third degree, one count of criminal possession of a controlled substance in the fourth degree and two counts of endangering the welfare of a child.
Following a jury trial, defendant was acquitted of one count each of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree and convicted of all remaining counts. She was sentenced to an indeterminate term of 4 to 12 years in prison for the conspiracy conviction, concurrent determinate terms of six years in prison, to be followed by two years of postrelease supervision, for each of the drug possession convictions, and concurrent one-year definite sentences for the endangering the welfare of a child convictions. Defendant appeals.
Initially, defendant contends that the evidence is legally insufficient to sustain her convictions and that the verdict is against the weight of the evidence. When reviewing a challenge to legal sufficiency, we view the proof in the light most favorable to the People and determine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crimes proven beyond a reasonable doubt (see People v George, 242 AD3d 1447, 1448 [3d Dept 2025]). Conversely, when reviewing whether a verdict is against the weight of the evidence, we first determine whether, based on all of the credible evidence, a different finding would have been unreasonable; if not, we consider all of the proof in a neutral light while affording deference to the jury's credibility determinations (see People v Adams, 201 AD3d 1031, 1032 [3d Dept 2022], lv denied 38 NY3d 948 [2022]).
To establish conspiracy in the second degree, the People were required to prove that defendant entered into an agreement with others to commit a class A felony and committed an overt act in furtherance thereof (see Penal Law §§ 105.15, 105.20). Here, the People alleged that defendant agreed to commit the class A felony of criminal sale of a controlled substance in the second degree, which occurs [*2]when a person knowingly and unlawfully sells a narcotic drug having an aggregate weight of one-half ounce or more (see Penal Law § 220.41 [1]). As for endangering the welfare of a child, the People were required to prove that defendant knowingly "act[ed] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than [17] years old" (Penal Law § 260.10 [1]).
At trial, the lead task force detective testified that he monitored hundreds of intercepted calls during the investigation, which initially targeted Brayboy. By monitoring Brayboy's communications, investigators learned defendant was selling drugs on his behalf, and they intercepted defendant's communications with an additional supplier, referred to in the indictment as UM 7669, who was neither identified nor charged. Drawing on his training and experience in narcotics wiretap investigations, the detective explained the coded terminology commonly used in cocaine trafficking and described defendant's role in obtaining cocaine from multiple suppliers and redistributing it to her own customers.
Defendant's communications with UM 7669 reflected an ongoing supplier relationship. For instance, on July 11, 2020, defendant acknowledged that she owed UM 7669 thousands of dollars for prior cocaine purchases and asked him to supply her with additional cocaine because she lacked enough to satisfy a customer's request for an ounce. On July 13, defendant asked UM 7669 for approximately five grams of cocaine to satisfy a customer request. On July 16, defendant advised UM 7669 that a customer wanted "a whole one," meaning one ounce of cocaine. Concerned that she only had "10 left," meaning approximately 10 grams, defendant told him that she lacked sufficient quantity to complete the transaction. The following day, defendant again asked UM 7669 for additional cocaine to fulfil a customer's request for 14 grams, a common resale quantity, according to the detective.
On August 5, 2020, defendant told UM 7669 that she had approximately 50 grams of cocaine, but her customer wanted three ounces, or approximately 85 grams. UM 7669 arranged to meet defendant at a local restaurant to deliver cocaine to her. Surveillance officers watched defendant arrive at the restaurant, enter briefly while her two young children remained in her car and depart shortly thereafter. Approximately 30 minutes later, the wiretap captured defendant asking a friend to borrow a digital scale.
Based on the intercepted communications, the police planned a coordinated "rip operation," designed to arrest defendant, seize the cocaine, then employ a ruse to release her and thereby preserve the secrecy of the ongoing investigation. Police conducted a traffic stop, predicated on a purported outstanding warrant, and transported defendant to the precinct. As female police officers began a search of her person, defendant handed them a bag of cocaine weighing more than one-half ounce, which she had concealed in her underwear[*3]. After confirming that defendant's phone was the same device being monitored by wiretap, police released her. Defendant later used the phone to call associates, described the encounter and reported that police had taken "50 grams" or 1.76 ounces of cocaine from her.
Viewed in the light most favorable to the People, this proof was legally sufficient to establish that defendant agreed with others to engage in the sale of cocaine with an aggregate weight of one-half ounce or more and that she committed overt acts in furtherance of that agreement (see People v Chambers, 185 AD3d 1141, 1144-1145 [3d Dept 2020], lv denied 36 NY3d 1055 [2021]; People v Johnson, 172 AD3d 1628, 1632-1633 [3d Dept 2019], lv denied 34 NY3d 951 [2019]). Defendant's contention that she did not necessarily obtain the precise quantities of drugs discussed in the intercepted calls is unavailing, as the jury could reasonably infer from her repeated negotiations and her admitted possession of more than one-half ounce of cocaine on August 5, 2020 that she agreed to participate in a sale of a quantity exceeding the requisite statutory threshold (see People v Johnson, 172 AD3d at 1632; compare People v Adams, 201 AD3d at 1033). As for the counts of endangering the welfare of a child, the jury was entitled to conclude that defendant involved her children in the events surrounding a narcotics transaction and created a likelihood of injury to their mental or moral welfare, a conclusion reinforced by her recorded statements acknowledging that the children were distressed by the traffic stop and their separation from her at the precinct (see People v Minwalkulet, 198 AD3d 1290, 1293 [4th Dept 2021], lv denied 37 NY3d 1147 [2021]).
Defendant's contention that the verdict is against the weight of the evidence largely mirrors her legal sufficiency claims. Although a different verdict would not have been unreasonable had the jury discounted the detective's testimony about the meaning of certain coded terminology (see People v Johnson, 172 AD3d at 1632-1633), when viewing the evidence in a neutral light and according appropriate deference to the jury's credibility determinations, we conclude that the verdict is not against the weight of the evidence (see id.; People v Pearson, 151 AD3d 1455, 1456 [3d Dept 2017], lv denied 30 NY3d 982 [2017]; People v Williams, 138 AD3d 1233, 1236 [3d Dept 2016], lv denied 28 NY3d 939 [2016]).
Next, we consider defendant's argument that she is entitled to reversal or remittal to consider her challenge to the People's certificate of compliance (hereinafter COC) after police body-worn camera footage was disclosed during trial. Specifically, defendant claims that Supreme Court erred when it denied her mistrial motion and instead sanctioned the People with a missing evidence charge without first inquiring about the People's compliance with CPL 245.20 and making record findings of its conclusion. We agree and therefore remit for further proceedings.
The existence [*4]of body-worn camera footage was first disclosed during the cross-examination of an Albany Police Department patrol officer, who testified that she was wearing an active body camera during defendant's arrest. Before trial, the People represented that they were unaware that any such body-worn camera footage existed and they had produced all discovery materials received from the Albany Police Department. After belatedly learning of the existence of the video, the People explained that the long-term investigation was conducted by officers who did not use body-worn cameras at the time, and that the prosecution was mistakenly advised that no body-worn camera footage existed. Defendant challenged the initial COC and moved for a mistrial. Supreme Court denied the motion and instead offered remedial relief, including the opportunity for defendant to recall the officer, to play the body-worn camera footage for the jury, or for the court to give a missing evidence jury instruction.
"CPL article 245 imposes automatic disclosure requirements upon the People, and it incentivizes compliance by tying their discovery obligations with their trial readiness" (People v Contompasis, 236 AD3d 138, 144 [3d Dept 2025] [citations omitted], lv denied 43 NY3d 1007 [2025]). Under the version of the statute in effect at the relevant time, the People were required to automatically disclose "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" (CPL 245.20 [former (1)]). As relevant here, that obligation included "electronic recordings . . . made or received in connection with the alleged criminal incident" (CPL 245.20 [1] [g]).
Once the People meet their automatic discovery obligations, they must file a COC affirming that, "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (CPL 245.50 [former (1)]). The filing of a COC represents an affirmative assertion that the People exercised due diligence and made reasonable inquiries before declaring readiness. The People's statement of trial readiness must be accompanied or preceded by a COC filed in good faith; that statement triggers the trial court's duty to "make inquiry on the record as to [the People's] actual readiness" (CPL 30.30 [former (5)]). In sum, "CPL 245.50 (3) and CPL 30.30 (5), taken together . . . require that the People file a proper COC reflecting that they have complied with their disclosure obligations before they may be deemed ready for trial" (People v Bay, 41 NY3d 200, 213-214 [2023]). Although belated disclosure does not, standing alone, render a statement of readiness illusory (see People v Graham, 233 AD3d 1361, 1365 [3d Dept 2024], lv denied 43 NY3d 944 [2025]), late disclosure [*5]provided in good faith cannot cure a failure to exercise diligence in the first instance (see People v Bay, 41 NY3d at 212). The People bear the burden of establishing that they exercised due diligence and made reasonable inquiries prior to filing the COC, and, where they fail to do so, the COC must be "deemed improper, the readiness statement stricken as illusory, and — so long as the time chargeable to the People exceeds the applicable CPL 30.30 period — the case dismissed" (id. at 213).
Even assuming that the People's explanation for the discovery lapse evinced good faith, Supreme Court was required to determine whether the People's failure to timely disclose the patrol officer's body-worn camera footage rendered the initial COC illusory (see People v James, 229 AD3d 1008, 1011 [3d Dept 2024]). Whether the People exercised due diligence "is not to be examined in a vacuum," but instead requires "a holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test" (People v Young, 243 AD3d 1303, 1307 [4th Dept 2025] [internal quotation marks and citation omitted]). Relevant considerations include "the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (People v Bay, 41 NY3d at 212). The absence of express findings on these essential factors precludes appellate review on this record. Accordingly, we hold the appeal in abeyance, reserve decision and remit the matter to Supreme Court to determine whether the People exercised due diligence in fulfilling their discovery obligations (see People v Coffey, 244 AD3d 1609, 1613 [3d Dept 2025]; People v Young, 243 AD3d at 1308; People v James, 229 AD3d at 1012).
Garry, P.J., Clark, Pritzker and Powers, JJ., concur.
ORDERED that the decision is withheld, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.